

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-13-2004

# Taylor v. Cherry Hill Bd Ed

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3738

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Taylor v. Cherry Hill Bd Ed" (2004). *2004 Decisions.* Paper 1095.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/1095

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 02-3738
_____

WAYNE T. TAYLOR,

Appellant

v.

CHERRY HILL BOARD OF EDUCATION; JACK MCGEE;
LAWYER CHAPMAN; JAMES COUNTRYMAN;
IRA KOZLOFF; AND THOMAS REDMAN

_____

On Appeal from the United States
District Court for the District of New Jersey
(D.C. Civil Action No. 01-CV-01049)
District Judge: Honorable Joel A. Pisano

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 12, 2003
_____

Before: AMBRO, FUENTES, and GARTH, Circuit Judges

(Opinion Filed: January 13, 2004)
_____

OPINION
_____

Garth, <u>Circuit</u> <u>Judge</u>:

Wayne Taylor sued the Cherry Hill Board of Education (the "Board") and several of its administrators alleging various forms of racial discrimination and retaliation in violation of federal and state law. The District Court entered summary judgment in favor of the Board and its administrators. Taylor appeals. We will affirm.

## I.

The Board oversees public schools in Cherry Hill, New Jersey, including Cherry Hill High School East ("CH East"), Cherry Hill High School West ("CH West"), and Barton Elementary School. In 1972, the Board hired Taylor, an African-American, as a janitor. In 1992, Taylor applied for an opening in the night foreman position, but the Board hired instead a Caucasian whom Taylor felt was less experienced. Believing the Board had discriminated against him because of his race, Taylor filed charges with New Jersey's Division of Civil Rights. Without acknowledging any liability, the Board settled the charges and awarded Taylor the night shift foreman position at CH West.

In 1998, the position of night shift foreman was eliminated at both CH East and CH West when the Cherry Hill school system privatized its janitorial services. It just so happened that around the same time the position of Assistant Operational Supervisor opened up at both schools. The night shift foreman at CH East, Thomas Houck, a Caucasian, was promoted on an interim basis to Assistant Operational Supervisor at CH East. On the Board's recommendation, Taylor transferred laterally to the head custodian position at Barton Elementary School.

In early August 1998, the Board posted a written announcement seeking applicants to permanently fill the Assistant Operational Supervisor position at CH West. A total of fifty-one persons applied for the opening, of which six were selected for interviews. Taylor was among the six interviewees who appeared before a six-member committee. At least four of the interviewers did not know at the time that Taylor had previously brought discrimination charges against the Board.

Following two rounds of interviews, the Board selected William Spoto, a Caucasian, to fill the opening. Spoto had impressive qualifications. A college graduate and a member of the American Society of Safety Engineers,

Spoto had previously managed a thirty-five acre site with a 100,000 square foot facility containing manufacturing, warehousing, R&D labs, and office facilities.

In January 1999, Taylor filed racial discrimination charges against the Board and its administrators. He filed his charges with the Equal Employment Opportunity Commission ("EEOC"). While those charges were pending, Spoto, who had been employed for approximately one year as Assistant Operational Supervisor, resigned to join another school district. The Board again sought applications for the opening and Taylor again applied. This time the Board selected Taylor for the position.

Although Taylor was appointed Assistant Operational Supervisor at CH West, he continued to feel slighted by the Board. He claims it came to his attention that Houck, who had since been made the permanent Assistant Operational Supervisor at CH East, was receiving overtime pay and was using school vehicles for personal use, benefits which had not been extended to Taylor. When Taylor demanded that he receive the same benefits, the Board denied his request because he was a salaried employee and vehicles were for business use only. Although Taylor later learned that the Board had deprived

-3-

Houck of those benefits as well, that was not the effect for which he had hoped. As he explained at his deposition, his "main purpose [was] not to stop Tom [Houck], it[ was] to get the same privileges he's getting." (Appendix ("App.") at 348.)

After obtaining a "right to sue" letter from the EEOC, Taylor filed a complaint against the Board and several of its administrators in the District Court. The complaint alleged that the Board and its administrators[1] had discriminated against Taylor on account of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), Section 1981, 42 U.S.C. § 1981(a), and New Jersey's Law Against Discrimination, N.J. Stat. Ann. § 10:5-12. The complaint also alleged that the Board and its administrators had conspired against Taylor in violation of 42 U.S.C. §§ 1985-86.

II.

Following the completion of discovery, the Board and its administrators moved for summary judgment on all counts. The District Court granted the motion in its entirety.

---

[1] The administrators are Jack McGee, Lawyer Chapman, James Countryman, Ira Kozloff, and Thomas Redman.

-4-

The District Court first held that Taylor could not make out a prima facie case of discrimination for the Board's failure to promote him to Assistant Operational Supervisor in 1998 because "all the evidence indicates that Taylor was not the most qualified individual who was considered for the position, therefore, he cannot establish the required element of the prima facie case that the position was awarded to a less qualified candidate." (App. at 17-18.) The Court also found that Taylor had not introduced any evidence that his transfer to Barton Elementary School in 1998 had been on account of race. The District Court similarly found a lack of evidence supporting Taylor's disparate treatment claims because Taylor himself had acknowledged that when he complained to the Board about Houck's overtime pay and company vehicle privileges, the Board "remedied the inequities by providing that no Assistant Operations Supervisors could drive company vehicles or earn overtime." (App. at 20.)

As for the retaliation claim, the District Court determined that Taylor could not establish a prima facie case because he had not provided any evidence demonstrating a causal link between the charges arising out of the

failure to promote Taylor to night shift foreman in 1992 and the failure to promote him to Assistant Operational Supervisor in 1998.

The District Court further held that, even if Taylor could make out a prima facie case of discrimination, the Board and its administrators were nevertheless entitled to summary judgment because Taylor had not offered any evidence demonstrating that the Board's proffered reason for hiring Spoto over Taylor, namely, that Spoto was better qualified, was pretextual. The District Court opined that "[a] different result in this case would have the unintended result of requiring employers to hire applicants who are members of a protected class if they meet the minimum job requirements, even if a more qualified applicant who is not a member of a protected class exists." (App. at 21.) The District Court similarly found that Taylor had not come forward with any evidence which showed that the proffered reason for not giving Taylor overtime and the use of company vehicles (i.e., the school policy did not permit such benefits for Assistant Operational Supervisors) was pretextual. Lastly, the District Court held that Taylor had not presented any evidence that the Board and the administrators had conspired against him in violation of

42 U.S.C. § 1985 or had failed to prevent such a conspiracy in violation of 42 U.S.C. § 1986.

Accordingly, the District Court entered summary judgment in favor of the Board and its administrators. Taylor filed a timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

III.

On review of a grant of summary judgment, we apply a plenary standard of review. *See Carter v. McGrady*, 292 F.3d 152, 157 (3d Cir. 2002). In doing so, we assess the record using the same summary judgment standard that guides district courts. *See Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 278 (3d Cir. 2000). To prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24 (1986). In the context of discrimination claims, we have explained that conclusory allegations of discrimination, in the absence of particulars, are insufficient to defeat

summary judgment. *See Jalil v. Avdel Corp.,* 873 F.2d 701, 707 (3d Cir. 1989)

(citing *Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir. 1985)).  Applying that

standard here, we conclude that the District Court properly granted summary

judgment in favor of the Board and its administrators.

Taylor argues that the District Court erred when it held that Taylor,

when he was not promoted to Assistant Operational Supervisor in 1998, had to

prove at the prima facie stage that he was more qualified than Spoto.  In a

failure to hire or promote case, the plaintiff must establish as part of his prima

facie case that (i) he applied for and (ii) was qualified for an available posi-

tion, (iii) was rejected, and (iv) after he was rejected the position remained

open and the employer continued to seek applications from persons of plain-

tiff's qualifications.[2] *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792,

802 (1973).  The District Court understood the fourth prong to require Taylor

to prove that he was more qualified than Spoto.  Taylor argues that he was

only required to prove at the prima facie stage that he had the minimum

qualifications needed for the job.

---

[2] Although the position of Assistant Operational Supervisor did not
remain open after Taylor's rejection, this variance does not change our analy-
sis. *See Bray v. Marriott Hotels,* 110 F.3d 986, 990 n.5 (3d Cir. 1997).

Although there is support in our prior jurisprudence for both views,[3] we need not resolve this dispute today because we agree with the District Court that, even if Taylor could prove a prima facie case, he failed to offer evidence suggesting that the Board's proffered (and non-discriminatory) reason for not hiring Taylor was pretextual or that it was motivated by racial animus. The Board and the administrators have come forward with substantial evidence demonstrating that they did not hire Taylor because, although he met the minimum qualifications, the pool of applicants included candidates who were more qualified than Taylor. Each of the certifications from the interviewers states that the interview committee recommended Spoto for the job because he was more qualified than Taylor.[4]

---

[3] *Compare Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 523 (3d Cir. 1992) (holding that attorney who claimed she was passed over for law firm partnership because of her gender need only show at prima facie stage that "[s]he was sufficiently qualified to be among those persons from whom a selection . . . would be made" (citation omitted)) *with Jewett v. Int'l Tel. & Tel. Corp.,* 653 F.2d 89, 91 (3d Cir. 1981) (holding in failure-to-promote context that plaintiff failed to make out prima facie case because person who was promoted had "superior qualifications").

[4] The record on appeal includes certifications from five of the six interviewers. Each of those certifications categorically denies that race played any role in the hiring process and states that the interview committee recommended Spoto for the job over Taylor because Spoto was better qualified.

(continued...)

Where, as here, the employer answers the plaintiff's prima facie case with a legitimate, non-discriminatory reason for its action, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."[5] *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir. 1994). In order to show pretext, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them 'unworthy of credence.'" *See id.* at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis-Cohen,* 983 F.2d 509, 531 (3d Cir. 1992)).

---

[4](...continued)
That assertion is corroborated by a final "Personnel Recommendation Form," which remarks that Spoto was the "most experienced and knowledgeable candidate." (App. at 186.)

[5] Taylor points out that the District Court framed the test as requiring the plaintiff to convince the factfinder that the reason was false *and* that discrimination was the real reason. (*See* App. at 17.) We believe that the District Court was stating the ultimate burden Taylor must establish at trial. *See St. Mary's Honor Ctr. v. Hicks,* 505 U.S. 502, 515 (1993) (stating that a Title VII plaintiff must show "*both* that the [employer's stated] reason was false, *and* that discrimination was the real reason").

Taylor emphasizes that he allegedly was told by the outgoing Assistant Operational Supervisor that Robert Coligan, one of the six interviewers, had mentioned *before* the Board began seeking applications that "he did not want [Taylor] for the position of Assistant Operations Supervisor." (App. at 301.) Coligan, who had previously managed the building and ground operations at CH West, had worked with Taylor for some time prior to the interview. Coligan described Taylor as a "solid worker," but felt he lacked leadership skills -- a quality that Coligan believed was a "key aspect" of the new position. (App. at 193.) While those statements tend to show that Coligan may have arrived at Taylor's interview with opinions about Taylor's qualifications for the position of Assistant Operational Supervisor, they do not demonstrate that Coligan formed those opinions on account of Taylor's race. *See Fuentes,* 32 F.3d at 767 ("It would defy common sense for an interviewer to put aside all his or her personal and/or acquired knowledge of the interviewee and to proceed as if the interviewee were a stranger, and Title VII does not mandate so much.").[6]

_____

[6] We also agree with the District Court that the alleged disparate treatment between Houck and Taylor does not rebut the Board's stated reason for not hiring Taylor. Taylor himself acknowledged that the administrators

(continued...)

-11-

Taylor emphasizes that a factfinder could find racial animus from the fact that Houck was allowed to temporarily fill the Assistant Operational Supervisor opening at CH East while a similar request by Taylor was denied by the Board. According to Taylor's testimony, however, the Board initially arranged for Houck and Taylor to become "floating custodians." (*See* App. at 292.) Sometime later, the Board through James Countryman asked Taylor if he was interested in transferring to a permanent opening at Barton Elementary School. Taylor accepted the Board's offer to become head custodian at Barton. We fail to see how this chain of events supports Taylor's claim of racial discrimination.

In sum, we do not find that Taylor introduced sufficient evidence for a reasonable factfinder to disbelieve the Board's stated reason for hiring Spoto or to conclude that the Board's decision was, more likely than not, motivated by racial animus.

---

[6](...continued)
stopped paying Houck overtime and discontinued Houck's vehicle privileges once it was brought to their attention.

IV.

Taylor also argues that he established a prima facie case of retaliation, which required him to show (i) that he engaged in a protected employee activity; (ii) the Board took an adverse employment action after or contemporaneous with his protected activity; and (iii) a causal link existed between his protected activity and the Board's adverse action. *See Nelson v. Upsala College,* 51 F.3d 383, 386 (3d Cir. 1995). We agree, however, with the District Court, which found that Taylor failed to come forward with evidence establishing the causal connection.

We have sometimes found that temporal proximity gave rise to a causal inference. *See, e.g., Jalil,* 873 F.2d at 708 (finding causal link where employer fired plaintiff two days after receiving notice of his EEOC claim). But here approximately five-and-a-half years passed from the time that Taylor filed his charges with New Jersey's Division of Civil Rights to the time the Board failed to hire Taylor for the Assistant Operational Supervisor position.[7] *See, e.g., Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir. 1997) (finding

---

[7] It is not clear from the record when the Board was notified about the charges, but the Division entered a finding of probable cause in January 1996, more than two-and-a-half years before the Board hired Spoto.

nineteen months between filing of EEOC charges and adverse action was too attenuated to create a genuine issue of fact on summary judgment). Taylor contends that we should look past the long passage of time because the promotion in 1998 "provided the defendants with their first opportunity to retaliate against [Taylor]." (Taylor Br. at 30.) We disagree. The Board could have demoted, harassed, falsely disciplined, or fired Taylor long before 1998.

Lastly, Taylor contends that he introduced enough evidence to survive summary judgment on his claim under Section 1985, which prohibits conspiracies to deprive persons of certain constitutional rights, and his claim under Section 1986, which imposes liability on persons who have the power to prevent a Section 1985 conspiracy, but have failed to do so. *See* 42 U.S.C. §§ 1985-86. We conclude that a reasonable factfinder could not, from the admissible evidence in the record, find that there was a conspiracy among the defendants to deprive Taylor of his constitutional rights or that they failed to prevent a third-party conspiracy.

V.

For the foregoing reasons, we will affirm the judgment of the District

Court.[8]

TO THE CLERK:

Please file the foregoing opinion.

/s/ Leonard I. Garth
Circuit Judge

-15-

---

[8] The Board asserts that Taylor's appeal is frivolous and has moved to sanction Taylor pursuant to Federal Rule of Appellate Procedure 38. We deny the Board's motion.