**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**YELLOW FREIGHT SYSTEMS, INC., Respondent.**

No. 90–3272.

United States Court of Appeals, Third Circuit.

Argued Nov. 8, 1990.

Decided April 11, 1991.

As Amended April 22, 1991.

Jeffrey Ivan Pasek, Cohen, Shapiro, Polisher, Shiekman & Cohen (Howard Lesnick (argued), of counsel), Philadelphia, Pa., for respondent.

Jerry M. Hunter, General Counsel, Robert E. Allen, Associate General Counsel,

Aileen A. Armstrong, Deputy Associate General Counsel, Frederick C. Havard (argued), N.L.R.B., Washington, D.C., for petitioner.

Before SLOVITER, Chief Judge *, SCIRICA, and SEITZ, Circuit Judges.

OPINION OF THE COURT

SLOVITER, Chief Judge.

The National Labor Relations Board (NLRB or Board) petitions this court to enforce its final decision and order in which it found that the employer, Yellow Freight Systems, Inc., discharged employee Lonnie Bedell for engaging in activities protected by the National Labor Relations Act and therefore committed an unfair labor practice in violation of sections 8(a)(1) and 8(a)(3) of the Act, 29 U.S.C. §§ 158(a)(1) and 158(a)(3) (1988). The employer asserts that we should decline to enforce the Board's decision on the ground that the administrative law judge was bound to a finding in an earlier arbitration proceeding that Bedell assaulted a supervisor. We must therefore decide the extent to which the Board must accord issue preclusive effect to that arbitral finding.

I.

*Facts and Procedural History*

Lonnie Bedell was hired in 1983 as a dock worker at Yellow Freight's Carlstadt, New Jersey facilities. His testimony as to the relevant facts set forth below was credited by the ALJ following a hearing. In April 1986, Bedell observed JoAnne DeGrosa, the sales secretary, crying in the company parking lot after she had dropped her keys. DeGrosa told Bedell that she had been sexually harassed by branch manager Dan Hamlin and sales manager Kenny Dore. Bedell reported the incident to his shop steward the following evening and requested that the steward discuss the allegations with Dore. Dore approached Bedell a day later, and told him that DeGrosa was not a union member and that the matter was none of Bedell's business.

The sexual harassment continued, and DeGrosa was discharged three months later. Bedell accompanied DeGrosa to the New Jersey Division of Civil Rights, assisted her in filing a claim with the Equal Employment Opportunity Commission, and signed an affidavit on her behalf. Thereafter, Bedell posted on the union's bulletin board a newspaper advertisement for an upcoming television series on workplace sexual harassment. As he did so, Bedell commented to a supervisor that Dore and Hamlin "shouldn't have done that to JoAnne DeGrosa." Supp.App. at 61–61B.

Shortly after these events occurred Bedell's supervisors began to give him more arduous and dangerous assignments, such as transporting heavier loads without mechanical assistance and working in the hazardous area of the dock where corrosive liquids are stored, even though he was the most senior dock worker at the Carlstadt facility. Bedell also was subjected to frequent workplace harassment. Although he apparently complained on several occasions to his supervisors and to the union officials, Bedell continued to be harassed. Bedell left the Carlstadt facility in 1987 and transferred to Yellow Freight's new terminal in Elizabeth, New Jersey. Dore was then appointed as the operations manager in Elizabeth. Bedell was again assigned harder and more demeaning work than he had been assigned before he assisted JoAnne DeGrosa, such as cleaning the coffee room and working without the use of the forklift truck and drag line.

Bedell filed his own charge with the Equal Employment Opportunity Commission on January 19, 1988, in which he asserted that he was being subjected to constant harassment in retaliation for the assistance he rendered to DeGrosa in opposing Dore's and Hamlin's sexual harassment practices. On February 3, 1988, Bedell was assigned to unload and move 40 cartons, each weighing 24 pounds. While he was in the process of placing them into three carts his supervisor Joseph Smidt

---

* The Honorable Dolores K. Sloviter became Chief Judge on February 1, 1991.

ordered him to consolidate the cartons into two carts.

Bedell and Yellow Freight contest the events that followed this order. Bedell contends that he told Smidt that he would follow the order but added "and I am not a piece of shit," in protest of the continuous harassment. Supp.App. at 88. Yellow Freight claims that he refused to follow the order, exclaiming, "because you're a big piece of shit.... [a]nd you're a scum bag, too." App. at 63–64. Smidt testified that Bedell came toward him waving his hands up and down and staring with a crazed look in his eyes. Smidt is 6 feet 2 inches tall, weighs 260 pounds, is 20 years younger than Bedell, and is a judo and karate champion. Bedell weighs 170 pounds. Smidt testified that he nevertheless feared bodily injury because he had heard rumors that Bedell carried a gun and had used it to threaten others. Smidt testified he turned and walked quickly to Dore's office. Bedell testified Smidt walked away and talked to the shift operation manager who was 30 or 40 feet away, and who told Bedell to go to Dore's office.

Bedell was thereafter discharged for disobeying a direct order and assaulting a supervisor.[1] Bedell filed a second complaint with the Equal Employment Opportunity Commission, alleging that he was fired in retaliation for filing his first EEOC complaint.

Bedell also filed a grievance based on his discharge which was arbitrated at a two-day hearing. Bedell retained personal counsel to represent him who also represented the union, Local 641 of the International Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America, AFL–CIO. Bedell was permitted to call his own witnesses and to cross-examine Yellow Freight's witnesses.

The hearing was limited, without objection by Yellow Freight, to the issue of whether there was just cause for Bedell's termination under the collective bargaining agreement entered into between Yellow Freight and the union. Bedell's lawyer stated on the record that he did not intend to raise any of the issues pertaining to Bedell's EEOC charges. The arbitrator found that although Bedell did not disobey a direct order, he did assault his supervisor, and there was therefore just cause for his discharge. He noted in his opinion that, "[t]he grievant's credibility was substantially diminished by the fact that he did not previously grieve what he characterized as unfair treatment when he was ordered to push his carts and not to use the drag line." App. at 491. Bedell appealed the arbitrator's decision to the Superior Court of New Jersey, which affirmed without opinion.

Finally, Bedell filed charges with the National Labor Relations Board alleging that his discharge by Yellow Freight constituted an unfair labor practice. The administrative law judge conducted a hearing after the arbitrator's decision was made. The ALJ found that Yellow Freight committed unfair labor practices in violation of sections 8(a)(1) and 8(a)(3) of the NLRA because Bedell was harassed and discharged for supporting DeGrosa's sexual harassment claim. In so finding, the administrative law judge concluded that much of the testimony supporting Yellow Freight's allegations that Bedell committed an assault was not credible. The ALJ refused to defer to the arbitrator's finding that Bedell had assaulted his supervisor, noting, "[i]t would not be appropriate to do so as the conflicting accounts presented to me for resolution are necessarily enmeshed with the evidence bearing on the EEOC matters." Supp.App. at 12.

The Board affirmed the ALJ's rulings, findings, and conclusions. It adopted the recommended order which directed Yellow Freight to (1) cease and desist from discriminating against and coercing employees

---

1. According to the arbitrator, "if the grievant's physical action toward his supervisor placed the supervisor in reasonable fear of imminent hostile touching or bodily injury, then such actions—especially when viewed in combination with the loud and angry words spoken by the grievant—constituted an assault on the supervisor which would satisfy both the criteria for summary discharge expressly established by the National Master Freight Agreement and the criteria universally applied in the work place." App. at 489–90.

in the exercise of their rights guaranteed by the NLRA; (2) reinstate Bedell with back pay and full seniority and remove from his files any reference to his unlawful discharge; (3) make available any records necessary to calculate back pay; and (4) post a notice to Yellow Freight's employees of the violation and compliance with the Board's order in a conspicuous place. The Board has petitioned this court to enforce the decision and order pursuant to section 10(e) of the NLRA, 29 U.S.C. § 160(e) (1988).

## II.

### Statutory Preclusion

■ According to the general rule regarding issue preclusion, or collateral estoppel, "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982); see also Rider v. Commonwealth of Pennsylvania, 850 F.2d 982, 989 (3d Cir.), cert. denied, 488 U.S. 993, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988).

Yellow Freight contends that either federal statutory or federal common law requires the NLRB to accord issue preclusive effect to the arbitrator's finding that Bedell assaulted his supervisor. Its statutory argument is based on the full faith and credit statute which provides that, "[t]he Acts of the legislature of any State ... [and] [t]he records and judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken."

28 U.S.C. § 1738 (1988) (emphasis added). Yellow Freight argues that because New Jersey would give the arbitrator's finding preclusive effect, so also must the Board.

Were we dealing merely with the arbitrator's finding, this case would be easier. Section 1738 does not by its terms apply to the findings of an arbitrator, and the Supreme Court has held that section 1738 preclusive effect need not be given to an unreviewed arbitration award. See McDonald v. City of West Branch, 466 U.S. 284, 287, 104 S.Ct. 1799, 1801, 80 L.Ed.2d 302 (1984). The Court reasoned that arbitration cannot provide an adequate substitute for a judicial proceeding to protect federal statutory and constitutional rights. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 477, 102 S.Ct. 1883, 1895, 72 L.Ed.2d 262 (1982) (arbitration decisions not subject to mandate of § 1738).

When a state court has affirmed an arbitration award, different considerations apply because then the issue is the preclusive effect to be given to a state court judgment. In Jalil v. Avdel Corp., 873 F.2d 701, 704 (3d Cir.1989), cert. denied, —— U.S. ——, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990), we held that section 1738 did not require that we afford preclusive weight to a state court's affirmance of an arbitrator's decision that an employee was discharged for insubordination rather than union activity because we concluded that the state court's review was narrow and it did not address the Title VII issues which were raised in the federal suit. The opinion suggests, however, that if the issues adjudicated by the state court were identical to those in the federal suit, section 1738 would require preclusion,[2] provided that the grievant was afforded a full and fair opportunity to litigate his claim in arbitration and the state court review is not too narrow to warrant the application of collat-

---

2. In Jalil, we distinguished Rider v. Commonwealth of Pennsylvania, 850 F.2d at 988, where we gave preclusive effect to a Pennsylvania Commonwealth Court judgment holding that the hiring of female guards to monitor female prisoners was a bona fide occupational qualification. We note that the statement in Jalil that in Rider "we held that an earlier state court affirmance of an arbitrator's decision precluded a federal discrimination action," 873 F.2d at 705 (emphasis added), was incorrect because in Rider the Commonwealth Court vacated the arbitrator's decision on the ground that it was not rationally derived from the terms of the collective bargaining agreement. See 850 F.2d at 986. Thus, Rider did not concern the preclusive effect to be given an arbitrator's decision, reviewed or unreviewed.

eral estoppel. *Cf. Bottini v. Sadore Management Corp.*, 764 F.2d 116, 121 (2d Cir.1985) (state court scope of review of arbitrator's decision too narrow to give state judgment preclusive effect). We need not decide whether the New Jersey Superior Court judgment was based on a similarly restrictive review because we conclude that in any event section 1738 does not apply to the NLRB.

The terms of the statute require only *courts* of the United States to give issue preclusive effect to state court decisions. The directive of section 1738 has been literally applied. The same analysis used in holding that section 1738 does not require giving preclusive effect to state administrative factfinding, *see University of Tennessee v. Elliott*, 478 U.S. 788, 794, 106 S.Ct. 3220, 3223, 92 L.Ed.2d 635 (1986), or arbitration awards, *see McDonald*, 466 U.S. at 287–88, 104 S.Ct. at 1801–02, because they are not "judicial proceedings" requires a conclusion that federal administrative agencies are not bound by section 1738 because they are not "courts."

In *Elliott*, the Court noted that section 1738 was enacted before the development of administrative agencies, 478 U.S. at 795, 106 S.Ct. at 3224, and thus limited its consideration of the preclusive effect to be given to state administrative decisions to the federal common law, eschewing the statute. If the phrase "judicial proceedings" is not broad enough to encompass the decisions of administrative law judges or the NLRB itself, then the phrase "courts" is similarly too narrow to encompass the Board's decision and order.

There are sound policy reasons why the Board should not be constrained by section 1738. Under that statute, preclusive effect is given to a state court judgment only to the extent the state itself would accord the judgment preclusive effect. *See, e.g., Kremer*, 456 U.S. at 466, 102 S.Ct. at 1889; *Jalil*, 873 F.2d at 704. If section 1738 were applicable to the Board, then its effectiveness in remedying unfair labor practices

would be dependent upon the states' varying views of claim or issue preclusion. Such a result would compromise the uniformity of rights intended by the passage of the federal labor laws. *Cf. Garner v. Teamsters Union*, 346 U.S. 485, 490, 74 S.Ct. 161, 165, 98 L.Ed. 228 (1953) (discussing Congress' intention in enacting Labor Management Relations Act provisions to avoid "diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies"). Moreover, we deem it significant that Yellow Freight cites no case, nor have we found one, that holds that notwithstanding the language of section 1738 restricting its application to courts, administrative agencies are similarly bound to its command.

Yellow Freight argues that even if the Board is not required to accord issue preclusive effect to the New Jersey Superior Court's summary affirmance of the arbitrator's decision, this court must do so because, as a "court," we fall within the literal language of section 1738. We cannot accept this effort to effect indirectly what cannot be accomplished directly. If a reviewing court must deny enforcement of a Board order whenever its decision relies on facts inconsistent with those earlier found by an arbitrator and upheld by a state court, then we would in effect be forcing the Board to accord issue preclusive effect to the arbitrator's factfinding. Whatever the merits of such a legal rule, we have already concluded that it cannot be supported by section 1738. Because it would be anomalous to conclude that although the Board is not statutorily required to defer to the arbitrator's factfinding, the same statute works to deny enforcement of its orders whenever it fails to so defer, we decline to so hold.[3]

## III.

### *Common Law Preclusion*

■ Of course, our conclusion that section 1738 is inapplicable here does not end our inquiry, for courts have "frequently

**3.** In light of our conclusion that section 1738 does not constrain NLRB factfinding, we need not consider the Board's alternative argument that section 10(a) of the NLRA, 29 U.S.C. § 160(a) (1988), constitutes an implied repeal of section 1738 as applied to NLRB factfinding.

fashioned federal common-law rules of preclusion in the absence of a governing statute." *Elliott*, 478 U.S. at 794, 106 S.Ct. at 3224; *see also McDonald*, 466 U.S. at 288, 104 S.Ct. at 1801 ("Because federal courts are not required by statute to give res judicata or collateral-estoppel effect to an unappealed arbitration award, any rule of preclusion would necessarily be judicially fashioned."). Thus, in *Elliott* the Supreme Court applied common law preclusion principles to Title VII litigation, holding that "when a state agency 'acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,' ... federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." 478 U.S. at 799, 106 S.Ct. at 3226 (quoting *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 1560, 16 L.Ed.2d 642 (1966)).

Common law preclusion also has been applied to collaterally estop the NLRB from finding the existence of a collective bargaining agreement when a federal court had earlier ruled that no binding labor agreement had been formed. *See, e.g., NLRB v. Donna–Lee Sportswear Co.*, 836 F.2d 31 (1st Cir.1987); *see also NLRB v. Heyman*, 541 F.2d 796 (9th Cir.1976) (Board precluded from determining that employer's repudiation of agreement and refusal to negotiate constituted an unfair labor practice where a federal court had earlier rescinded the collective bargaining agreement).

Yellow Freight contends that a common law rule of preclusion should be applied here because federal labor policy strongly encourages the private resolution of labor disputes. Federal courts have indeed consistently given highly favorable status to consensual arbitration. *See, e.g., Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 243, 90 S.Ct. 1583, 1588, 26 L.Ed.2d 199 (1970) (noting importance of arbitration as an instrument of federal policy for resolving disputes between labor and management); *NLRB v. A. Duie Pyle, Inc.*, 730 F.2d 119, 124 (3d Cir.1984) (law gives highly favorable status

to private, amicable resolution of labor disputes); *NLRB v. Pincus Bros., Inc.–Maxwell*, 620 F.2d 367, 372 (3d Cir.1980) (acknowledging national policy in favor of the private resolution of labor disputes through consensual arbitration). We note, however, that Yellow Freight's rule of preclusion might tend to undermine this federal preference for arbitration because if the Board were required to defer to the arbitrator's factual findings, employees might decide to forgo arbitration of their grievances in order to preserve their unfair labor practice claims.

In any event, the policy in favor of arbitration must be balanced against a federal policy to ensure the ability of the NLRB to remedy unfair labor practices. The preeminence of the congressional policy in favor of remedying unfair labor practices is reflected in section 10(a) of the NLRA, which states that the Board's power to prevent such practices "shall not be affected by any other means of adjustment or prevention that has been or may be established by agreement, law, or otherwise." 29 U.S.C. § 160(a) (1988). This section has been cited to emphasize that the Board acts in the public interest to enforce public, not private rights, and that the "parties cannot by contractual agreement divest the Board's function to operate in the public interest." *Gulf State Mfrs. v. NLRB*, 598 F.2d 896, 901 (5th Cir.1979) (en banc).

The Board itself, recognizing the value of arbitration under certain circumstances, has voluntarily and as a matter of its own discretion adopted a deferral policy under which it will defer to an arbitrator's award provided certain conditions are met: the proceedings appear to have been fair and regular, all parties have agreed to be bound, the decision of the arbitrator is not clearly repugnant to the purposes and policies of the Act, and the arbitrator has adequately considered the unfair labor practice issue. *See, e.g., Olin Corp.*, 268 N.L.R.B. 573, 573–74 (1984); *Spielberg Mfg. Co.*, 112 N.L.R.B. 1080 (1955); *NLRB v. Al Bryant, Inc.*, 711 F.2d 543, 549 (3d Cir.1983), *cert. denied*, 464 U.S. 1039, 104 S.Ct. 699, 79 L.Ed.2d 165 (1984).

Although we have held that it is the court's responsibility to ensure that the Board follow its own policies, *see NLRB v. Pincus Bros., Inc.–Maxwell,* 620 F.2d at 372, we review the Board's deferral decisions for abuse of discretion only. *Al Bryant,* 711 F.2d at 550; *NLRB v. General Warehouse Corp.,* 643 F.2d 965, 970 (3d Cir.1981). We have explicitly recognized the importance of the Board's condition that deferral depends on the arbitrator's consideration of the statutory issue. In *Al Bryant* we stated, "[t]he requirement that the statutory issues have been presented to and decided by the arbitrator is of particular significance to insure that the Board does not abdicate its responsibility to protect statutory rights." 711 F.2d at 550; *see also NLRB v. General Warehouse Corp.,* 643 F.2d 965 (3d Cir.1981) (Board not required to accord claim preclusive effect to arbitrator's decision that there was just cause for employee's discharge because arbitrator never considered unfair labor practice issues before the Board).

Yellow Freight concedes that the arbitrator never considered whether unfair labor practices had been committed and that, under the Board's deferral policy, the Board should decide whether the unfair labor practice charges at issue have merit. Nevertheless, Yellow Freight argues that in considering the merits the NLRB should be required to defer to specific facts found by the arbitrator, namely that Bedell assaulted his supervisor. The Sixth Circuit rejected a similar claim, holding that deference to an arbitrator's factfinding is not warranted in cases where "the arbitrator was not fully apprised of the facts relevant to the unfair labor practice charge." *Grand Rapids Die Casting Corp. v. NLRB,* 831 F.2d 112, 116 (6th Cir.1987). We agree with that court's reasoning that "[i]t makes little sense to defer to the arbitrator's specific factual findings where deference overall was refused because of the inadequacy of the factual presentation to the arbitrator." *Id.*

The motivations and the credibility of the parties and their witnesses may take on an entirely new light once the additional facts related to the unfair labor practice charge are introduced. In the present case, for example, the administrative law judge had reason to question the credibility of Yellow Freight's witnesses' version of the facts in light of the evidence presented to him regarding Bedell's past employment relationship with his supervisors. On the other hand, the arbitrator never heard much of the evidence of Dore's harassment of Bedell in retaliation for Bedell's assistance to DeGrosa. Moreover, the arbitrator, who discounted Bedell's credibility on the ground that Bedell had not previously grieved his treatment, was apparently unaware that Bedell had complained about harassment in the EEOC claim that he filed shortly before his discharge.

Because the evidence related to the unfair labor practice claim, here the history of discrimination and Bedell's earlier efforts to alleviate the conditions under which he was forced to work, was not presented to the arbitrator, the ALJ did not abuse his discretion in concluding that the conflicting accounts of Bedell's actions on the day he was discharged from Yellow Freight were "necessarily enmeshed with the evidence bearing on the EEOC matters," Supp.App. at 12, and that deference to the arbitrator's factfinding was therefore not required.

We need not in this case decide whether the Board would ever be bound as a matter of common law issue preclusion to defer to an arbitrator's factual findings in a case where deference to an arbitrator's award was not required under the Board's own deferral policy. It is sufficient to resolve the issue before us to hold that the Board is not bound to the earlier factual finding of an arbitrator when the arbitrator was not presented with evidence essential to the Board's resolution of that same factual issue in disposing of an unfair labor practice charge.[4]

---

4. Because we conclude that the administrative law judge permissibly found that Lonnie Bedell did not in fact assault his supervisor, we need

not address Yellow Freight's contention that in the absence of this finding the Board's conclusion was not supported by substantial evidence.

IV.

*Conclusion*

For the foregoing reasons, we will enforce in its entirety the decision of the National Labor Relations Board ordering Yellow Freight to reinstate Lonnie Bedell with back pay and to cease and desist from engaging in unfair labor practices.