ASHEVILLE JET, INC., D/B/A MILLION AIR ASHEVILLE, PLAINTIFF-APPELLEE v. THE CITY OF ASHEVILLE, NORTH CAROLINA MUNICIPAL CORPORATION; ASHEVILLE REGIONAL AIRPORT AUTHORITY; AND THE COUNTY OF BUNCOMBE, DEFENDANTS-APPELLANTS

No. COA08-1549

(Filed 19 January 2010)

**1. Appeal and Error— interlocutory order—no substantial right affected—no possibility of inconsistent verdicts**

Defendants' appeal from an interlocutory order denying their motion to dismiss plaintiff's claims was not properly before the Court of Appeals because the order does not affect a substantial right. As there was no possibility of inconsistent verdicts resulting from a state court action and a federal Part 16 proceeding, defendants will not be prejudiced by having to defend in both forums.

**2. Appeal and Error— interlocutory order—no substantial right affected—no possibility of inconsistent verdicts—no preemption**

Plaintiff's claims brought in state court are not preempted by his Part 16 proceeding initiated with the Federal Aviation Administration. Plaintiff cannot obtain any of the relief sought in his state court action in the Part 16 proceeding.

1

**3. Appeal and Error— interlocutory order—no substantial right affected—no possibility of inconsistent verdicts—no preemption**

Plaintiff's state court claims are not preempted by any express language in a Congressional enactment. The express language in the Airport and Airway Improvement Act preserves appropriate state court action involving disputes between federally funded airports and their tenants.

**4. Appeal and Error— interlocutory order—no substantial right affected—no possibility of inconsistent verdicts—no preemption**

Plaintiff's state court claims are not preempted by implication from the depth and breadth with which the Airport and Airway Improvement Act occupies the legislative fields of aviation and federally funded airports.

**5. Appeal and Error— interlocutory order—no substantial right affected—no possibility of inconsistent verdicts—no preemption**

Plaintiff's state court claims are not preempted by a conflict with a Congressional enactment. Plaintiff's claims and the redress plaintiff seeks in the Part 16 proceeding and the state court action are so dissimilar that there is no danger that the state court action will conflict with the Part 16 proceeding.

Judge JACKSON concurs in the result only by separate opinion.

Appeal by Defendants from order entered 15 September 2008 by Judge J. Marlene Hyatt in Superior Court, Buncombe County. Heard in the Court of Appeals 19 August 2009.

*Roberts & Stevens, P.A., by Sarah Patterson Brison and Jacqueline D. Grant, for Plaintiff-Appellee.*

*Asheville City Attorney's Office, by City Attorney Robert W. Oast, Jr. and Associate City Attorney Kelly L. Whitlock, for Defendant-Appellant City of Ashville.*

*Womble Carlyle Sandridge & Rice, P.L.L.C., by James R. Morgan, Jr. and Robert T. Numbers, II, for Defendant-Appellant Asheville Regional Airport Authority.*

ASHEVILLE JET, INC. v. CITY OF ASHEVILLE

[202 N.C. App. 1 (2010)]

McGEE, Judge.

Plaintiff entered into a lease with Asheville Regional Airport Authority (the Authority) to act as a Fixed Based Operator (FBO) at the Asheville Regional Airport (the Airport) on 1 January 1993, to provide general aviation services such as fueling, maintenance and ground services for private aircraft at the Airport. Pursuant to the lease agreement between Plaintiff and the Authority, Plaintiff was to pay the Authority a monthly rent amounting to five percent of Plaintiff's gross receipts.

The Authority receives federal money pursuant to 49 U.S.C. §§ 47101 et seq., the Airport and Airway Improvement Act of 1982 (AAIA). By accepting these federal grants, the Authority agrees to abide by certain policies, rules, standards, and regulations set out in the AAIA. Approval for these grant applications is conditioned on the Authority's agreement to abide by the policies, rules, standards, and regulations concerning airport operations (grant assurances) established by the Federal Aviation Administration (FAA), a division of the Department of Transportation (DOT). Pursuant to 14 CFR 16.23, any "person directly and substantially affected by any alleged noncompliance" with the AAIA, including grant assurances, "may file a complaint with the [FAA] Administrator. A person doing business with an airport and paying fees or rentals to the airport shall be considered directly and substantially affected by alleged revenue diversion as defined in 49 U.S.C. 47107(b)." 14 CFR 16.23 (2008). This type of action is commonly known as a "Part 16 proceeding."

Encore FBO Acquisitions, LLC (Encore) entered into an FBO lease agreement with the Authority on 9 November 2007. Plaintiff initiated a Part 16 proceeding with the FAA pursuant to 14 CFR 16.23 on 25 January 2008, alleging that the Authority was in violation of multiple grant assurances. Specifically, Plaintiff alleged that the lease agreement between Encore and the Authority granted Encore substantially more favorable terms than those granted Plaintiff in its lease agreement with the Authority, including the rent charged to Encore. Plaintiff alleged that the lease agreement between Encore and the Authority violated certain sections of 49 U.S.C. § 47107(a) and 40103(e), implementing regulations, policy, and grant assurances.

Plaintiff also filed a complaint against Defendants in Buncombe County Superior Court on 6 February 2008, in which it alleged that the more favorable terms granted to Encore constituted a breach of Plaintiff's lease agreement with the Authority, because Plaintiff's

lease agreement included a provision guaranteeing that more favorable terms would not be granted to any competitor. Plaintiff's complaint included claims for breach of contract, constitutional violations, statutory violations, procedural violations, unfair and deceptive trade practices, and tortious interference with contract and business relations. Plaintiff asked for monetary and declaratory relief. The FAA is not a party to Plaintiff's state court action.

The Authority moved to dismiss Plaintiff's complaint on 28 July 2008, pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure, arguing that: (1) Plaintiff's claims were preempted by federal law, (2) Plaintiff had failed to exhaust its administrative remedies, (3) Plaintiff's claims were subject to the primary jurisdiction of the FAA, and (4) Plaintiff failed to state a claim upon which relief could be granted. The City of Asheville filed a motion to dismiss on the same grounds as the Authority on 7 August 2008. By order entered 15 September 2008, the trial court denied Defendants' motions to dismiss. Defendants appeal. Additional facts will be addressed in the body of this opinion.

I.

**[1]** Defendants argue a single assignment of error on appeal: "The trial court erred in denying Defendants' Motions to Dismiss because [Plaintiff's] claims for relief are preempted by federal law."

The dispositive question is whether this interlocutory appeal from the order of the trial court is properly before our Court. Defendants argue that their appeal from the 15 September 2008 order is properly before us because the 15 September 2008 order affects substantial rights that will be lost absent immediate appeal. We disagree.

N.C. Gen. Stat. § 1-277(a) (2007) states: "An appeal may be taken from every judicial order or determination of a judge of a superior or district court, upon or involving a matter of law or legal inference, whether made in or out of session, which affects a substantial right claimed in any action or proceeding[.]" *See also* N.C. Gen. Stat. § 7A-27(d)(1) (2007); *Jeffreys v. Raleigh Oaks Joint Venture*, 115 N.C. App. 377, 379, 444 S.E.2d 252, 253 (1994). "A right is substantial when it will clearly be lost or irremediably and adversely affected if the order is not reviewed before final judgment." *RPR & Assocs. v. University of N.C.-Chapel Hill*, 153 N.C. App. 342, 347, 570 S.E.2d 510, 514 (2002) (citation omitted). " 'The "substantial right" test for

appealability is more easily stated than applied.' 'It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered.' " *Bernick v. Jurden*, 306 N.C. 435, 439, 293 S.E.2d 405, 408 (1982) (citations omitted). "[I]t is the appellant's burden to present appropriate grounds for this Court's acceptance of an interlocutory appeal and our Court's responsibility to review those grounds." *Jeffreys*, 115 N.C. App. at 379, 444 S.E.2d at 253.

Defendants argue that, because the trial court denied their motions to dismiss, Defendants will "now be required to litigate the same issues in two different proceedings." Defendants contend that "the trial court's order affects [their] substantial right to avoid the possibility of inconsistent verdicts in separate trials. Our Supreme Court has held that the right to avoid the possibility of two trials on the same issues is a substantial right that *may* support immediate appeal." *Alexander Hamilton Life Ins. Co. of Am. v. J&H Marsh & McClennan, Inc.*, 142 N.C. App. 699, 701, 543 S.E.2d 898, 900 (2001) (citations omitted) (emphasis added).

> One writer, in seeking to formulate a rule based on our decisions in these cases, has concluded: "The right to avoid one trial on the disputed issues is not normally a substantial right that would allow an interlocutory appeal, while the right to avoid the possibility of two trials on the same issues can be such a substantial right." We adhere to our earlier statement that "[i]t is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal was sought is entered." However, we are of the opinion that the above statement constitutes, as the author suggests, only "a general proposition that in many circumstances should be helpful in analyzing the substantial right issue."

*Green v. Duke Power Co.*, 305 N.C. 603, 606, 290 S.E.2d 593, 595 (1982) (internal citations omitted). Therefore, the possibility that Defendants may be required to defend two "trials" on the same issues does not create a *per se* right to immediate appeal of this interlocutory order. "Ordinarily the possibility of undergoing a second trial affects a substantial right only when the same issues are present in both trials, creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue." *Green*, 305 N.C. at 608, 290 S.E.2d at 596.

II.

In order to determine whether Defendants are facing the possibility of prejudice resulting from separate "trials" involving the same issues reaching different verdicts in this case, we must examine the relevant facts in the context of the procedures and purposes of the two proceedings at issue. *Id.* at 606, 290 S.E.2d at 595.

Plaintiff initiated a Part 16 proceeding against the Authority on 25 January 2008, alleging that the Authority had violated multiple federal statutes involving "regulations, policy and relevant grant assurances" by: (1) improperly leasing to Encore a federally funded apron that was previously open for general aviation use; (2) permitting Encore to operate without complying with minimum standards; and (3) providing substantially favorable lease terms to Encore." Plaintiff requested the FAA administrator to:

> (1) withhold any and all federal funds promised but [that] have not yet been paid to the Airport Sponsors; (2) refuse to accept future grant applications from the Airport Sponsors until the Airport is in compliance with applicable federal statutes, regulations, FAA policy and the grant assurances provided by the Airport Sponsors; and (3) seek repayment from each of the Airport Sponsors for the previously paid airport grant funds based on violations of applicable statutes,. regulations, and grant assurances.

Plaintiff's 6 February 2008 complaint alleged claims for (1) breach of contract, (2) constitutional violations, (3) statutory violations, (4) procedural violations, (5) unfair and deceptive trade practices, and (6) tortious interference with contract and business relations. Plaintiff also sought monetary damages, a declaratory judgment, injunctive relief, and requested a jury trial.

III.

[2] In order to determine the appealability of the 15 September 2008 order, we must address Defendants' argument that Plaintiff's state court action is preempted by the Part 16 proceeding initiated with the FAA. This is because, if Plaintiff's state court action is preempted, there can only be one proceeding, and the possibility of inconsistent "verdicts" cannot exist. We are aware that "this '[C]ourt will not give advisory opinions or decide abstract questions.' " *Kirkman v. Wilson*, 328 N.C. 309, 312, 401 S.E.2d 359, 361 (1991) (citation omitted); *see also State v. Rackley*, —— N.C. App. ——, ——, 684 S.E.2d 475, 476

(2009). Though we hold Defendants' appeal is interlocutory, and though we address issues argued by Defendants in their appeal, we do so only because we find it necessary in order to reach our determination that Defendants' interlocutory appeal does not affect any substantial right, and is therefore not properly before us.

"State action may be foreclosed by express language in a congressional enactment, by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541, 150 L. Ed. 2d 532, 550 (2001).

> The question of whether a federal statute preempts state law is "basically one of congressional intent." Similarly, whether federal regulations preempt state law depends on whether the agency that prescribed the regulations "meant to pre-empt [state] law, and, if so, whether that action is within the scope of the [agency's] delegated authority."

*Drake v. Lab. Corp. of Am. Holdings*, 458 F.3d 48, 56 (2d Cir. 2006) (internal citations omitted).

As Plaintiff argues, pursuant to the Part 16 proceeding, Plaintiff has not asked for and, as we will discuss further below, *cannot obtain* any of the relief Plaintiff seeks from Plaintiff's state court action. The Part 16 proceeding only involves the issue of federal funding for the Authority's airport. Any person doing business with an airport receiving AAIA grant funds may initiate an enforcement proceeding against the airport by filing a complaint with the FAA alleging violations of grant assurances. *Airborne Tactical Advantage Co. v. Peninsula Airport Comm'n*, 2006 U.S. Dist. LEXIS 24271, 3-4 (E.D. Va. Mar. 21, 2006) (citations omitted). The FAA has sole jurisdiction to make the initial determination concerning an airport's alleged violation of grant assurances. *Id.* Any party to an action initiated with the FAA may appeal the final agency decision to an appropriate United States Court of Appeals. *Id.* at 5-6; *see also BMI Salvage Corp. v. FAA*, 272 Fed. Appx. 842, 845-46 (11th Cir. 2008).

Several federal circuit courts that have addressed this issue have held that the authority of the FAA to determine the issues before it in Part 16 disputes cannot be preempted by prior state court actions involving the same or similar issues. *Arapahoe County Pub. Airport Auth. v. FAA*, 242 F.3d 1213, 1218-21 (10th Cir. 2001); *American Airlines, Inc. v. DOT*, 202 F.3d 788, 799-800 (5th Cir. 2000) ("DOT is

an agency, not a 'court.' " (citation omitted). " 'We agree with the [defendant] . . . that "[t]he fact that the state court ruled on the same issue, regardless whether its ruling agreed with the Commission's ruling, does not affect the Commission's authority to determine its own jurisdiction." ' " (quoting *Consolidated Oil & Gas, Inc. v. FERC*, 806 F.2d 275, 280 n.5 (D.C. Cir. 1986)). "[T]he competing policy considerations weigh against requiring DOT to grant preclusive effect to the state court proceeding." (citation omitted)); *NLRB v. Yellow Freight Systems, Inc.*, 930 F.2d 316, 320-22 (3d Cir. 1991).

> Turning to supremacy principles, we reiterate that the issue before the FAA was whether the Authority complied with the conditions imposed on it by federal law and agreement with a federal administrative agency, in return for the Authority's receipt of federal funds. This federal scheme regulating airport grant compliance is "designed in part to insure the maintenance of conditions essential to an efficient national air transport system, including access to airports on a reasonable and nondiscriminatory basis." On this point, we must agree with the Fifth Circuit that in the arena of aviation regulation "federal concerns are preeminent," and the Department of Transportation, through the FAA, is statutorily mandated to represent those concerns. Indeed, it is "difficult to visualize a more comprehensive scheme of combined regulation, subsidization, and operational participation than that which Congress has provided in the field of aviation." This certainly tilts the balance toward the application of supremacy principles to protect against state courts trumping the federal interests and concerns embodied within the airport grant program.

*Arapahoe*, 242 F.3d at 1220-21 (internal citations omitted); *see also NLRB*, 930 F.2d at 321 (Where a federal agency "acts in the public interest to enforce public, not private rights, . . . the 'parties cannot by contractual agreement divest the [agency's] function to operate in the public interest.' "). We therefore hold that were the trial court to render a decision in this matter before the Part 16 proceeding was complete, the state court decision, even *assuming arguendo* that it purported to resolve issues concerning grant assurances, would have no preclusive effect on the authority of the FAA to determine the issues before it. Our holding that state court action cannot have any preclusive effect on the FAA's ability to exercise its exclusive jurisdiction over Part 16 proceedings is not, however, the same as holding that state courts are precluded from addressing matters of state law that might involve issues related to those brought in a Part 16 pro-

ceeding. In addition, we must address the issue of what preemptive effect, if any, a prior Part 16 proceeding would have on a later state court action.

## IV.

### A.

**[3]** *Preemption by Express Language in a Congressional Enactment*

The question of whether a federal statute preempts state law is "basically one of congressional intent." Similarly, whether federal regulations preempt state law depends on whether the agency that prescribed the regulations "meant to pre-empt [state] law, and, if so, whether that action is within the scope of the [agency's] delegated authority."

*Drake*, 458 F.3d at 56.

The AAIA includes no express language stating that Part 16 proceedings are the sole remedy available to resolve conflicts between federally funded airports and tenants. In fact, as Plaintiff points out, 49 U.S.C. § 40120 specifically states: "Additional remedies.—A remedy under this part [the AAIA] is *in addition to any other remedies provided by law*." 49 U.S.C. § 40120(c) (emphasis added).

Even though we have found federal preemption of the standards of aviation safety, we still conclude that the traditional state and territorial law remedies continue to exist for violation of those standards. Federal preemption of the standards of care can co-exist with state and territorial tort remedies. For instance, in *Silkwood*, the Supreme Court held that a state tort remedy can coexist with federal preemption of the regulation of nuclear safety. 464 U.S. at 256. The Court in *Silkwood* held that "insofar as damages for radiation injuries are concerned, preemption should not be judged on the basis that the Federal Government has so completely occupied the field of safety that state remedies are foreclosed, but on whether there is an irreconcilable conflict between the federal and state standards or whether the imposition of a state standard in a damages action would frustrate the objectives of the federal law." *Id.*

In the present case, we find no "irreconcilable conflict between federal and state standards." Nor do we find that "imposition of a [territorial] standard in a damages action would frustrate the objectives of the federal law." Quite to the contrary, it is evident

in both the savings and the insurance clauses of the FAA that Congress found state damage remedies to be compatible with federal aviation safety standards. *The savings clause provides that "a remedy under this part is in addition to any other remedies provided by law." Clearly, Congress did not intend to prohibit state damage remedies by this language. . . . Furthermore, there is no federal remedy for [the relief sought in the plaintiff's state court complaint] to be found in the FAA itself.*

*Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 375 (3d Cir. V.I. 1999) (citations omitted) (emphasis added); *see also Drake*, 458 F.3d at 58 ("This 'saving' clause clearly indicates that the Act's remedies are not intended to be exclusive and that the Act therefore does not itself preempt Drake's claims for state-law remedies for violations of the FAA regulations.") (citation omitted). In *American Airlines v. Wolens*, 513 U.S. 219, 130 L. Ed. 2d 715 (1995), the United States Supreme Court stated:

The United States maintains that the DOT has neither the authority nor the apparatus required to superintend a contract dispute resolution regime. Prior to airline deregulation, the [DOT's predecessor agency] set rates, routes, and services through a cumbersome administrative process of applications and approvals. When Congress dismantled that regime, the United States emphasizes, the lawmakers indicated no intention to establish, simultaneously, a new administrative process for DOT adjudication of private contract disputes. We agree.

*Wolens*, 513 U.S. at 232, 130 L. Ed. 2d at 727-28 (internal citations omitted). We hold that Plaintiff's claims are not preempted by any express language in a congressional enactment. To the contrary, express language in the AAIA preserves appropriate state court action involving disputes between federally funded airports and their tenants.

### B.

*Preemption by Implication from the Depth and Breadth of a Congressional Scheme That Occupies the Legislative Field*

[4] Though Congress has clearly preempted the field of aviation safety, *see Arapahoe*, 242 F.3d at 1220-21, that is not tantamount to preemption of all matters concerning aviation or federally funded airports.

[D]espite the variety of these opportunities for federal preeminence, we have never assumed lightly that Congress has derogated state regulation, but instead have addressed claims of preemption with the starting presumption that Congress does not intend to supplant state law. Indeed, in cases like this one, where federal law is said to bar state action in fields of traditional state regulation, we have worked on the "assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

*New York State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654-55, 131 L. Ed. 2d 695, 704-05 (1995) (internal citations omitted). As we have noted above, Congress has expressly stated that the remedies available through Part 16 proceedings were in addition to "any other remedies provided by law." 49 U.S.C. § 40120(c). The *Wolens* Court stated that: "A remedy confined to a contract's terms simply holds parties to their agreements," *Wolens*, 513 U.S. at 229, 130 L. Ed. 2d at 726, and held "that the [relevant act's] preemption prescription bars state-imposed regulation of air carriers, but allows room for court enforcement of contract terms set by the parties themselves." *Id.* at 222, 130 L. Ed. 2d at 721; *see also id.* at 231, 130 L. Ed. 2d at 727; *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 525-27, 120 L. Ed. 2d 407, 428-29 (1992) (plurality opinion). " 'There is nothing inherently inconsistent in the proposition that even if the federal government has entirely occupied the field of regulating an activity a state may simultaneously grant damages for violation of such regulations.' " *Abdullah*, 181 F.3d at 376 (citation omitted).

The relevant portion of the contract between Plaintiff and the Authority states:

FAIRNESS IN DEALINGS. Lessor shall not require a greater level of service or performance from lessee than that which is required from any other occupant of the Airport providing some or all of the Commercial Aviation Activities ("Competitor"), nor shall Lessor grant terms more favorable than those contained in this Lease to any other Competitor. It is the intention of the parties that no Competitor, whether presently occupying the Airport or occupying the Airport hereafter, have an unfair advantage by paying a lesser rental than Lessee or being provided with terms or treatment which are directly more favorable to Competitor than those provided to or required of Lessee.

ASHEVILLE JET, INC. v. CITY OF ASHEVILLE

[202 N.C. App. 1 (2010)]

When an airport accepts federal AAIA grant funds, it must adhere to certain policies, conditions, and restrictions. Relevant among these are the following: "the airport will be available for public use on reasonable conditions and without unjust discrimination[.]" 49 U.S.C. § 47107(a)(1). "The terms imposed on those who use the airport and its services, including rates and charges, must be fair, reasonable, and applied without unjust discrimination[.]" *Airport Compliance Requirements*, FAA Order 5190.6A (hereinafter referred to as "Order 5190.6A") § 4-13(b).[1] "[F]ixed-base operators similarly using the airport will be subject to the same charges[.]" 49 U.S.C. § 47107(a)(5). "In respect to a contractual commitment, a sponsor may charge different rates to similar users of the airport if the differences can be justified as nondiscriminatory and such charges are substantially comparable. These conclusions must be based upon the facts and circumstances involved in every case." Order 5190.6A § 4-14d(1)(c).

The issues in the two proceedings are similar—whether Defendants treated Plaintiff and Encore in a sufficiently similar manner pursuant to the terms of the leases negotiated with the Authority by Plaintiff and Encore. However, the language of Plaintiff's contract with the Authority and the rules of contract interpretation relevant to that contract, and the language and application of the rules applicable to the Authority's grant assurances are not the same. The language of the contract between Plaintiff and the Authority is stated in mandatory terms, and places a strict obligation on the Authority to insure equity among all tenants providing similar services at the Airport. The language of this contract should be interpreted pursuant to our State's laws concerning contract interpretation. The regulations governing the Authority pursuant to its acceptance of AAIA grant funds are not identical to the terms of Plaintiff's contract with the Authority. Further, the FAA looks to federal law and its own regulations and policies to determine whether the Authority is in violation of any grant assurances.

We first examine relevant language from the contract between Plaintiff and the Authority: (1) "Lessor shall not require a greater level of service or performance from lessee than that which is required from any other occupant[,]" (2) "nor shall Lessor grant terms more favorable than those contained in this Lease to any other Competitor[,]" and (3) "no Competitor, whether presently occupying the Airport or occupying the Airport hereafter, [shall] have an unfair

---

1. Order 5190.6A was cancelled and replaced by Order 5190.6B, effective 30 September 2009.

advantage by paying a lesser rental than Lessee or [be] provided with terms or treatment which are directly more favorable to Competitor than those provided to or required of Lessee."

This language from the contract between Plaintiff and the Authority could be interpreted as holding the Authority to a higher standard than that imposed by the grant assurances. Relevant Part 16 procedural guidelines involving the interpretation of federal regulations governing the Authority's obligations pursuant to the acceptance of AAIA grant funds state: "In respect to a contractual commitment, a sponsor may charge different rates to similar users of the airport if the differences can be justified as nondiscriminatory and such charges are substantially comparable. These conclusions must be based upon the facts and circumstances involved in every case." Order 5190.6A § 4-14d(1)(c).

In light of our analysis thus far, we hold that Plaintiff's state contract claim is not preempted by implication from the depth and breadth of a congressional scheme that occupies the legislative field.

## C.

### Preemption by Implication Because of a Conflict with a Congressional Enactment

[5] According to the FAA:

[T]he FAA interest in a lease is confined to its impact on the airport owner's obligations to the Government, the acceptability of the lease for such purposes should in no way be construed as an endorsement of the entire document. When a lease has been referred by an airport owner, reviewed in the appropriate FAA office, and found not to violate any compliance obligation, the owner should be advised that the FAA has no objection to it. The word "approved" should not be used for this purpose.

Order 5190.6A § 6-3(d). As Plaintiff notes, In *Platinum Aviation and Platinum Jet Center BMI v. Bloomington-Normal Airport Authority, Illinois*, Final Decision and Order of the FAA (Docket No. 16-06-09) (November 28, 2007), the FAA stated: "The [airport authority's] decision not to exercise the [lessee's] 'option provision' is a contract issue between [the airport authority] and [the lessee]; it must be resolved in state court, not through the Part 16 process." *Id.* at 18.

The FAA neither approves nor monitors agreements between airport sponsors and airport tenants. The FAA does not arbitrate

disputes through the Part 16 complaint process. Nor does the FAA enforce contract terms between parties to an agreement when the FAA is not a party to that agreement. Rather, the FAA enforces the grant agreements it enters into with airport sponsors.

*Id.* The "FAA is not able to represent both the federal interest and the Complainants' contractual interests in this case." *Id.* at 15. A state court has no "jurisdiction over a sponsor's federal obligations under the federal grant assurances. . . . However, the state court has otherwise broad authority to decide contractual disputes under state law." *Id.* at 19 (We note that in *Platinum Aviation*, there had been a prior state court action involving the same dispute, and another was pending at the time this final decision and order was entered).[2]

The FAA has explicitly decided that resolution of contract disputes not involving the FAA is a matter for state courts. *Id.* "The [agency's] statement is dispositive on the question of implicit intent to pre-empt unless either the agency's position is inconsistent with clearly expressed congressional intent, or subsequent developments reveal a change in that position." *Hillsborough County v. Automated Medical Laboratories, Inc.*, 471 U.S. 707, 714-15, 85 L. Ed. 2d 714, 722 (1985) (citation omitted). We note that the federal circuit courts that have addressed the preemption issue have not indicated that state court actions involving the same issues advanced in Part 16 proceedings are inappropriate, they have simply held that state court decisions cannot preclude the FAA from making a full independent review of all issues properly initiated in a Part 16 proceeding. *See Arapahoe*, 242 F.3d at 1218-21; *American Airlines*, 202 F.3d at 799-801; *NLRB*, 930 F.2d at 320-21.

Part 16 proceedings are strictly limited to determinations of whether an airport that has accepted AAIA grant funds is in compliance with the requirements attendant to the acceptance of those funds. Part 16 proceedings cannot resolve disputes between an airport and a third party. Part 16 proceedings cannot provide any civil remedy to a complainant, even if the FAA determines that a challenged lease violates federal grant assurances. The sole power of the FAA to penalize violations of federal grant assurances is through the withholding of grant funds to the offending authority.

---

2. For a more thorough analysis of the differing duties of state courts and the FAA concerning contract issues involving potential violations of federal grant assurances, see the full FAA final decision and order entered in *Platinum Aviation*.

We hold that any determination made by the FAA that the Authority did not violate the terms of the Authority's agreements with the federal government pursuant to the acceptance of AAIA grant funds would not preclude Plaintiff's state court action, as Plaintiff's state court contract claim involves different issues, and also raises claims and seeks relief that cannot be addressed in Plaintiff's Part 16 proceeding. *See Abdullah*, 181 F.3d at 375-76. Plaintiff's claims and the redress Plaintiff seeks in both the Part 16 proceeding and the state court action are so dissimilar that, in this instance, we cannot say that the two actions will result in multiple "trials" on the same issues. A determination that the Authority has not violated any terms of the grant authority simply would not amount to a determination that the Authority did not violate the terms of the contract between Plaintiff and the Authority. We find no danger that the state court action could conflict with a congressional enactment on these facts, and therefore hold that there is no preemption by implication because of a conflict with a congressional enactment in this case.

In light of our holdings above, we further hold that if Plaintiff proceeds with both its state court action and the Part 16 proceeding, because the claims and remedies sought in the separate actions are so dissimilar, no factual or issue determination made in one of the proceedings would be binding in the other. Therefore, the possibility of prejudice to Defendants from inconsistent "verdicts" does not exist. To the extent, if any, that the state court's ruling (or the jury's verdict) encroaches on the FAA's exclusive jurisdiction concerning grant assurances, the state court disposition could not bind the FAA in the Part 16 proceeding. *Arapahoe*, 242 F.3d at 1220-21; *NLRB*, 930 F.2d at 321. We can foresee this potential in particular concerning Plaintiff's claims involving constitutional, statutory and procedural violations.

V.

While we do not preclude the possibility that a situation might arise where the facts and the remedies sought by a party in both a state court action and a Part 16 proceeding could be so similar that litigation in both forums would be inequitable, we are not faced with such a situation in this case. We therefore hold that in this case there is no possibility of inconsistent "verdicts" resulting from the state court action and the Part 16 proceeding, *Green*, 305 N.C. at 608, 290 S.E.2d at 596, and therefore Defendants will not be prejudiced by having to defend in both the state court action and the Part 16 proceeding. Having so held, we must further hold that the 15 September 2008

interlocutory order does not affect any of Defendants' substantial rights, *Alexander Hamilton*, 142 N.C. App. at 701, 543 S.E.2d at 900. Therefore this interlocutory appeal is not properly before us, and we must dismiss it.

Dismissed.

Judge ERVIN concurs.

Judge JACKSON concurs in the result only by separate opinion.

JACKSON, Judge, concurring in result only by separate opinion.

Although I concur with the result reached by the majority opinion, I write separately to emphasize that, because we dismiss the appeal as interlocutory, we should not discuss in-depth the merits of the federal preemption issue.

Our case law suggests that the purpose of dismissing interlocutory appeals is to prevent premature discussions of different aspects of a case through repeated, effectively meaningless, appeals. *See, e.g., Veazey v. Durham*, 231 N.C. 357, 363, 57 S.E.2d 377, 382 (1950) ("There is no more effective way to procrastinate the administration of justice than that of bringing cases to an appellate court piecemeal through the medium of successive appeals from intermediate orders."). In fact, this Court recently emphasized that, having dismissed an appeal as interlocutory, we could not properly discuss the merits of the appeal:

> Because we dismiss the State's appeal as interlocutory, the issues presented by defendant's motion and whether the trial court properly ruled upon defendant's motion are matters not properly before us at this time. *See Poore v. Poore*, 201 N.C. 791, 792, 161 S.E. 532, 533 (1931) ("It is no part of the function of the courts, in the exercise of the judicial power vested in them by the Constitution, to give advisory opinions, or to answer moot questions, or to maintain a legal bureau for those who may chance to be interested, for the time being, in the pursuit of some academic matter.") (citations omitted).

*State v. Rackley*, 200 N.C. App. 433, 434, 684 S.E.2d 475, 476 (2009). Both this Court and our Supreme Court have equated addressing the merits of an interlocutory appeal with issuing an advisory opinion: "At this stage of the proceeding the appeal is premature, and this

Court, if it now entertained the appeal, would be giving an advisory opinion on a matter that will not be in controversy if subsequently plaintiffs do recover on their primary claims." *Sportcycle Co. v. Schroader*, 53 N.C. App. 354, 357, 280 S.E.2d 799, 801 (1981); *see also Kirkman v. Wilson*, 328 N.C. 309, 312, 401 S.E.2d 359, 361 (1991) (vacating the Court of Appeals decision because the case should have been dismissed as interlocutory and, as such, the Court of Appeals opinion amounted to an advisory opinion).

Here, the substance of both the City's and Authority's appeal is whether "the trial court commit[ted] reversible error in denying the . . . motions to dismiss because Asheville Jet's claims for relief are preempted by federal law[.]" The Court holds that the appeal is interlocutory, and therefore, it should not reach the merits of the case. However, thirteen pages of the majority opinion discuss the issue of federal preemption in-depth.

The potential for inconsistent verdicts is an important discussion with respect to whether the appeal is interlocutory. *See, e.g., Green*, 305 N.C. at 608, 290 S.E.2d at 596 ("Ordinarily the possibility of undergoing a second trial affects a substantial right only when the same issues are present in both trials, creating the possibility that a party will be prejudiced by different juries in separate trials rendering inconsistent verdicts on the same factual issue."). Simply noting that the claims are distinct and that the remedies are dissimilar, however, adequately emphasizes that inconsistent verdicts are not possible. A portion of the penultimate paragraph of section IV of the majority opinion seems sufficient to dispose of the case as interlocutory:

> . . . Plaintiff's state court contract claim involves different issues, and also raises claims and seeks relief that cannot be addressed in Plaintiff's Part 16 proceeding. *See Abdullah*, 181 F.3d at 375-76. Plaintiff's claims and the redress Plaintiff seeks in both the Part 16 proceeding and the state court action are so dissimilar that, in this instance, we cannot say that the two actions will result in multiple "trials" on the same issues. A determination that the Authority has not violated any terms of the grant authority simply would not amount to a determination that the Authority did not violate the terms of the contract between Plaintiff and the Authority.

Although I agree that this appeal is interlocutory and should be dismissed, I think that an extensive discussion of the merits of the case, as the majority has conducted, goes beyond our authority as an

appellate court. Therefore, I would vote only to dismiss as interlocutory based upon the reasoning set forth in this concurrence.