Ricardo JALIL, Appellant,

v.

**AVDEL CORPORATION.**

Nos. 87–5538, 88–5182.

United States Court of Appeals,
Third Circuit.

Argued Dec. 13, 1988.

Resubmitted Sur Petition for
Rehearing April 19, 1989.

Decided May 4, 1989.

Douglas S. Eakeley, David W. Garland (argued), Riker, Danzig, Scherer, Hyland & Perretti, Morristown, N.J., for appellant.

Stephen S. Moyer (argued), Jed L. Marcus, David R. Miller, Grotta, Glassman & Hoffman, P.A., Roseland, N.J., for appellee.

Before GIBBONS, Chief Judge, HUTCHINSON, and ROSENN, Circuit Judges.

OPINION OF THE COURT[1]

ROSENN, Circuit Judge.

The appellant instituted these proceedings charging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, because of national origin discrimination during his employment and retaliatory discharge. The district court granted summary judgment for the defendant, holding that plaintiff failed to present a prima facie case. In a second action, the court dismissed the plaintiff's case on the basis of *res judicata* and enjoined him from bringing any more employment related claims. The primary issues raised on appeal by the plaintiff are whether the record established sufficient evidence for a prima facie case of retaliatory discharge and whether the evidence sufficiently raised a question of material fact pertaining to the alleged pretextual reason for the employer's action. We reverse and remand for trial.

I.

Avdel Corporation (Avdel), a manufacturer of metal fasteners, employed the plaintiff, Ricardo Jalil, of Chilean origin, from 1977 to 1985. During that period, Jalil progressed from lower-skill positions to the "lead man" position he occupied at the time of his discharge. At the same time, plaintiff also became active in union affairs. He was elected shop steward in 1979, re-elected in 1980, and became president of his Local in 1984. He held that position when the company terminated him.

---

1. After reconsideration of a petition for panel rehearing filed by Avdel Corporation, Appellee, the opinion of the court entered February 1, 1989, and the judgment thereon were vacated by order filed April 19, 1989, and the matter was listed for submission before the panel.

Some months before Jalil's discharge, he filed a grievance claiming that Avdel was discriminating against him because of his union activity. Six days later, on September 19, 1985, the company informed Jalil that his employment had been terminated for failure to report his absence by the third day. After the union interceded on his behalf, Avdel reduced Jalil's discharge to a three-day suspension, with the admonishment that the next infraction would result in termination.

On September 26, 1985, Jalil filed another grievance, in which he complained of harassment and discrimination on the basis of national origin and union activity. The union again supported his claims, although Avdel denied them, and the grievance remained unsettled.

On October 17, 1985, Jalil filed a charge of discrimination with the New Jersey Division of Civil Rights (DCR) and the Equal Employment Opportunity Commission (EEOC), alleging that Avdel had denied him access to his personnel file and had suspended him in retaliation for filing a grievance with his union and because of his national origin. Avdel received a copy of the charge of discrimination on October 28, 1985. Simultaneously, the events precipitating Jalil's discharge began and rapidly ran their course.

On the day Avdel received a copy of the discrimination charge, the department foreman approached Jalil at his work station and asked him to remove the radio headset that he was wearing. After protesting, Jalil complied. Two days later the foreman again requested Jalil to remove his radio headset. Jalil refused, and the foreman sought assistance from the plant manager and plant foreman. Again Jalil refused the request, arguing that the plant safety rules did not prohibit the radio's use. After telling the foremen and the manager to get out of his department, however, Jalil acceded to their requests and removed the radio. Nevertheless, later that day Avdel fired Jalil for "gross insubordination."

After his termination, on October 31, 1985, Jalil filed a second charge of discrimination with the DCR and the EEOC, claiming that Avdel fired him in retaliation for filing the earlier charge of discrimination.[2] Finally, on December 8, 1986, Jalil filed pro se his first suit in the United States District Court for the District of New Jersey, alleging, among other things, that Avdel terminated his employment because of his national origin and in retaliation for filing his charge with the EEOC.

On July 13, 1987, the district court granted summary judgment in favor of the defendant Avdel on the ground that Jalil had failed to establish a prima facie case of either national origin discrimination or retaliatory discharge. Following his unsuccessful motion to vacate the summary judgment order, and while his appeal of the order was pending in this court, Jalil brought a second Title VII action in district court. In March 1988, however, the district court granted defendant's motion for summary judgment in the second action, holding the claim barred by *res judicata*. The district court also granted Avdel's counterclaim for an injunction prohibiting Jalil from bringing further employment-related lawsuits unless he secures the permission of the court. Jalil appealed this decision as well. Because we reverse the first grant of summary judgment and remand for trial, the second district court judgment and the injunction effectively will be vacated.[3]

## II.

As a preliminary matter, and although the defendant did not raise the issue in the trial court or in its brief to this court but did so in its petition for rehearing, we will address whether the full faith and credit

2. Jalil pursued several other avenues of relief as well, but succeeded in none. The New Jersey Division of Unemployment denied his claim for unemployment compensation. Likewise, his grievance filed pursuant to the governing collective bargaining agreement was rejected by the appointed arbitrator. The New Jersey Superior Court upheld the arbitrator's decision on appeal. Finally, the National Labor Relations Board rejected Jalil's complaint on the basis of the arbitrator's adverse decision.

3. Our jurisdiction is conferred by 28 U.S.C. § 1291 (1982).

statute, 28 U.S.C. § 1738,[4] would require dismissal of Jalil's Title VII claims on the basis of issue preclusion. Defendant argues that the New Jersey superior court's affirmance of the arbitrator's decision against Jalil, *see supra* note 2, precludes further litigation of any subsequent Title VII claims in federal court.

Before instituting this action in federal court, Jalil, through his union, filed grievances against Avdel challenging his discharge, alleging it was not for cause. The grievances ultimately proceeded to arbitration, and the arbitrator found in favor of the employer, Avdel. The arbitrator found that Jalil had been insubordinate in refusing to remove his radio headset, and, the arbitrator concluded, "since insubordination had been found the Arbitrator has no alternative but to sustain the termination." The arbitrator thus rejected plaintiff's claim that he was discharged because of his union activity. Moreover, the arbitrator summarily rejected as unsupported by the evidence plaintiff's claim that his discharge was in retaliation for his filing a complaint with the EEOC. The arbitrator concluded that Jalil's discharge only two days after Avdel received notice of the EEOC claim was not enough to tie the discharge to the protected activity.

Plaintiff sought review of the arbitrator's decision in New Jersey superior court. By statute, a New Jersey court may vacate an arbitrator's decision only if it was procured by undue means or if the powers of the arbitrator were exceeded. N.J.Stat. Ann. § 2A:24–8 (West 1987). The court concluded that the arbitrator acted within his powers in finding that insubordination was grounds for automatic termination under the collective bargaining agreement. It also found no evidence of undue means. Therefore, the court confirmed the arbitration decision in favor of Avdel.

The defendant argues that under the full faith and credit statute, 28 U.S.C. § 1738, the state court's affirmance of the arbitra-

tor's decision precludes further litigation of Jalil's Title VII claims. Defendant correctly observes that the Supreme Court has held that Title VII did not abrogate section 1738. In *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982), the Court held that a state court review of an agency decision must be given the same preclusive effect by a federal court as it would be given by another state court, provided that the state proceedings met minimum due process requirements.

█ The Supreme Court has not directly addressed the issue of whether an arbitrator's decision (as distinguished from an agency decision) that has been reviewed by the state court is entitled to preclusive effect. In *Rider v. Commonwealth of Pennsylvania*, 850 F.2d 982 (3d Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 556, 102 L.Ed.2d 582 (1988), however, this court answered that question and held that a state court review of an arbitrator's decision may also be entitled to preclusive effect under section 1738 in subsequent Title VII actions. Because the case at hand involves a state court review of an arbitrator's decision, *Rider* compels us to apply section 1738 and follow its directive of assessing the preclusive effect the state court's decision would be given by another court in the state.

█ New Jersey courts follow the rule of issue preclusion as described in the Restatement of Judgments. *See Colucci v. Thomas Nicol Asphalt Co.*, 194 N.J.Super. 510, 515, 477 A.2d 403, 406 (1984). The Restatement explains:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

---

**4.** Section 1738 provides in pertinent part:
Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories

and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.
28 U.S.C. § 1738.

Restatement (Second) of Judgments § 27 at 250 (1982). Before issue preclusion applies in an action, however, New Jersey law, not atypically, requires that the issue presented in the later action be identical to the issue decided in the earlier adjudication. *See, e.g., Morristown Trust Co. v. Thebaud,* 43 N.J.Super. 209, 217, 128 A.2d 288, 293 (1957). Thus a New Jersey court would give preclusive effect to the state court's affirmance of the arbitrator's decision only if the issues adjudicated by that reviewing court were identical to the Title VII issues.

A review of the New Jersey court's opinion confirming the arbitrator's decision reveals that the issues there are not identical to the issues in Jalil's Title VII action in federal court. The state court confined its analysis to the statutory grounds for vacating an arbitrator's decision. In describing its limited role under the statute, it stated:

> We are not second judges of what the arbitrator did.... We are not here to say that given the same set of facts, we would come to different conclusions or given the same testimony we would find different facts.

The court applied the very narrow standard of review that allows only for assessing *whether the arbitrator exceeded his authority or whether his decision was obtained by undue means.* Although citing the arbitrator's conclusions on the subject, the court itself did not address the Title VII issues raised by the plaintiff. Thus, for example, the state court itself made no finding as to the correctness of the arbitrator's rejection of plaintiff's discrimination and retaliation claims. Nor did the state court address the Title VII issue of whether the defendant's proffered reason for firing Jalil, namely, insubordination, was merely a pretext for a discriminatory or retaliatory discharge. Because the issues in the two actions differ, the state court's affirmance of the arbitrator's decision cannot have preclusive effect in the Title VII action before us.

It is this difference in issues that distinguishes this case from *Rider,* in which we held that an earlier state court affirmance of an arbitrator's decision precluded a federal discrimination action. 850 F.2d at 995. In *Rider,* the state court reversed an arbitrator's decision that female gender was not a bona fide occupational qualification (BFOQ) for prison guard positions supervising female inmates because the arbitrator exceeded his authority in arriving at that conclusion. The arbitrator, the state court concluded, should not have looked to employment discrimination case law that balanced the rights of inmates against the rights of guards, but rather should only have interpreted the relevant collective bargaining agreement. *Id.* at 987. The state court then undertook its own analysis of the collective bargaining agreement, concluding that female gender was a rational requirement under the contract and implicitly holding that female gender was a BFOQ for the positions at issue. The state court therefore reversed the arbitrator's decision and found in favor of the defendant.

When the *Rider* plaintiffs brought a Title VII action in federal court, the district court dismissed on the ground of issue preclusion. On appeal, the plaintiffs argued that the state court's decision should not have preclusive effect because the standard of review of an arbitrator's decision was so narrow as to make the issue presented there different from the issue presented in the Title VII action. *Id.* at 990–91. We rejected that argument because, we held, the state court reviewing the arbitrator's decision necessarily addressed the BFOQ question, which was dispositive of the Title VII claim. We wrote:

> The flaw in the male guard's argument is that it fails to take into account the manner in which both the arbitrator and the Commonwealth Court grafted classic Title VII BFOQ analysis onto their respective interpretations of the agreement.... On appeal, the Commonwealth Court ... held that female gender was indeed a BFOQ for the jobs at issue in this case. Thus, it is beyond dispute that the issue throughout both proceedings prior to the institution of the instant federal suit was whether female gender

was a BFOQ for the positions being advertised.... *Id.* at 991. Because the merits of the Title VII claim "critically hinged" on the BFOQ issue, *id.*, dismissal was appropriate.

■ In Jalil's case, the arbitrator made passing reference to plaintiff's Title VII claims, although from our reading it appears to us that he did not adequately consider the retaliatory discharge claim or the question whether a firing may be discriminatory notwithstanding the employee's insubordination.[5] In contrast to *Rider*, however, the state court here gave no consideration to plaintiff's Title VII rights, explicitly refusing to stand as "second guessers of what the arbitrator did." Thus, here, unlike *Rider*, the state court reviewing the arbitrator's decision did not address the same issues raised in Jalil's Title VII action. *Cf. Kremer*, 456 U.S. at 480 n. 21, 102 S.Ct. at 1896 n. 21 (construing the state court's affirmance of plaintiff's discharge as a decision that the claim lacked merit as a matter of law). Issue preclusion therefore poses no bar to plaintiff's action here. We next consider whether summary judgment for Avdel was nevertheless appropriate.

## III.

In reviewing a grant of summary judgment, we apply the same test the district court should have employed initially. *Hankins v. Temple Univ.*, 829 F.2d 437, 440 (3d Cir.1987). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment bears the burden of demonstrating the absence of material fact issues regardless of which party would

have the burden of persuasion at trial. If the nonmoving party has the burden of persuasion at trial, "the party moving for summary judgment may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden of proof at trial." *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir.) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986)), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987).

The burden of proof in Title VII cases is governed by the framework erected in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and iterated by its progeny. *Jackson v. University of Pittsburgh*, 826 F.2d 230, 232 (3d Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 732, 98 L.Ed.2d 680 (1988). Plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. Once the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to rebut the proof of discrimination by articulating some legitimate, nondiscriminatory reason for the employee's discharge. The ultimate burden of persuasion, which remains always with the plaintiff, may then be met by proving by a preponderance of the evidence that the alleged reasons proffered by the defendant were pretextual and that the defendant intentionally discriminated against the plaintiff. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981); *Hankins*, 829 F.2d at 440. The plaintiff may satisfy the ultimate burden of proving discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered

---

5. Although the arbitrator gave some consideration to Jalil's Title VII claims, his decision is not entitled to preclusive effect in federal court. By contrast, a state court decision is entitled to such effect under section 1738. *Kremer*, 456 U.S. at 476, 102 S.Ct. at 1894. The Supreme Court has held that an arbitral decision, al-

though it may be accorded great weight if it gives full consideration to an employee's Title VII rights, cannot in itself be dispositive of a Title VII claim in federal court. *See Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 60 & n. 21, 94 S.Ct. 1011, 1025 & n. 21, 39 L.Ed.2d 147 (1974).

explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095 (citing *McDonnell Douglas,* 411 U.S. at 804–05, 93 S.Ct. at 1825–26). Circumstantial evidence may suffice to challenge the defendant's alleged reasons as pretextual. *Chipollini,* 814 F.2d at 895.

■ Because the plaintiff bears the burden of persuasion in Title VII actions, a defendant is entitled to summary judgment if it can demonstrate that the plaintiff could not carry the burden of proof at trial. The defendant may demonstrate this in two ways: it may show that the plaintiff is unable to establish a prima facie case of discrimination; or, if the plaintiff has successfully established a prima facie case, the defendant may win summary judgment by showing that the plaintiff could not produce sufficient evidence of pretext to rebut an assertion of nondiscriminatory reasons for the discharge.

■ Summary judgment is inappropriate, however, if the plaintiff establishes a prima facie case and counters the defendant's proffered explanation with evidence raising a factual issue regarding the employer's true motivation for discharge. When the defendant's intent has been called into question, the matter is within the sole province of the factfinder. As we have pointed out before, because

> intent is a substantive element of the cause of action—generally to be inferred from the facts and conduct of the parties —the principle is particularly apt that courts should not draw factual inferences in favor of the moving party and should not resolve any genuine issues of credibility.

*Ness v. Marshall,* 660 F.2d 517, 519 (3d Cir.1981) (citing *Associated Hardware Supply Co. v. Big Wheel Distrib. Co.,* 355 F.2d 114, 121 (3d Cir.1966)).

■ The district court here held that Jalil failed to establish a prima facie case of discrimination and retaliatory discharge because, it concluded, qualification for the job was an essential element of both claims, and Jalil's unquestionable insubordination made him unqualified. We reject the district court's analysis. Insubordination, un-

der the *McDonnell Douglas* method of proof, plainly is not something the plaintiff must *disprove* to succeed at the first level of proof, but rather it is more logically a defense that is raised at the second level to meet the plaintiff's prima facie case of discrimination. *See Pollock v. American Tele. & Tele. Long Lines,* 794 F.2d 860, 863–64 (3d Cir.1986) (insubordination, poor performance, and misconduct asserted as legitimate reasons for employee discharge); *Brown v. Parker–Hannifin Corp.,* 746 F.2d 1407, 1411 (10th Cir.1984) (insubordination may serve as a legitimate, nondiscriminatory reason for discharge); *Nulf v. Int'l Paper Co.,* 656 F.2d 553, 559 (10th Cir.1981) (insubordination held true reason for employee discharge); *Goodwin v. City of Pittsburgh,* 480 F.Supp. 627, 634 (W.D. Pa.1979) (finding insubordination rationale to be pretextual and holding for plaintiff), *aff'd without opinion,* 624 F.2d 1090 (3d Cir.1980); *cf. Bellissimo v. Westinghouse Elec. Corp.,* 764 F.2d 175, 181 (3d Cir.1985) (inability to get along with supervisor is legitimate reason for discharge), *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1244, 89 L.Ed.2d 353 (1986).

■ To the extent employee qualification is an element of a Title VII action, we hold that plaintiff established it. Avdel employed Jalil for eight years and promoted him during that period to the "lead man" position in his department. Thus, his satisfactory performance of duties over a long period of time leading to a promotion clearly established his qualifications for the job. *Cf. Bellissimo,* 764 F.2d at 180 (plaintiff was qualified for the job although she could not prove that the poor performance reasons given for her discharge were pretextual); *Brown,* 746 F.2d at 1411 (plaintiff was qualified for the job and established a prima facie case of discrimination even though defendant established that she had been insubordinate).

## IV.

■ Having disposed of the "qualification" issue, we turn now to examine seriatim Jalil's two claims of discrimination.

To establish a prima facie case of national origin discrimination, plaintiff must show that (1) he was a member of a protected class; (2) he was qualified for the job; and (3) he was discharged while other employees not in his protected class were retained. *Cf. Jackson v. University of Pittsburgh,* 826 F.2d at 233 (race discrimination); *Chipollini,* 814 F.2d at 897 (age discrimination); *Bellissimo,* 764 F.2d at 179 (sex discrimination). There is no dispute that plaintiff, Chilean in origin, is a member of a protected class. Further, as we noted above, Jalil qualified for the job. A review of the record leads us to conclude, however, that Jalil was unable to satisfy the third element of his prima facie case.

Jalil attempts to prove this aspect of his case with evidence that he previously submitted a grievance charging national origin discrimination, that two other employees were cited for insubordination but were not discharged, and that other employees wore radio headsets and were not disciplined. On review of the record, however, plaintiff's evidence lacks the necessary mortar with which to build a case of national origin discrimination. Jalil's earlier grievances are insufficient to support a Title VII claim, as they represent nothing more than mere allegations of discrimination. *Cf. Meiri v. Dacon,* 759 F.2d 989, 998 (2d Cir.) (conclusory allegations of discrimination, absent particulars, insufficient to defeat summary judgment motion in Title VII case), *cert. denied,* 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985). The evidence that two other employees were not discharged despite their insubordination is likewise inadequate without some evidence of relevancy. Besides not demonstrating that the employees were similarly situated, plaintiff failed to show that the two employees were not members of the protected class.

Finally, the evidence regarding other employees wearing headsets is not persuasive. That evidence consisted of the plant manager's testimony at Jalil's unemployment compensation hearing that three years earlier an employee had been ordered to remove his headset radio and had complied, and Jalil's vague testimony at that hearing that other people wore radio headsets.

Again, the evidence is simply too general, does not address the plaintiff's claim of national origin discrimination, and fails to make out a prima facie case.

■ Jalil's claim of retaliatory discharge, however, has some real substance. The controlling standards are quite plain. To establish a prima facie case, plaintiff must show (1) that he engaged in a protected activity; (2) that he was discharged subsequent to or contemporaneously with such activity; and (3) that a causal link exists between the protected activity and the discharge. *Jordan v. Clark,* 847 F.2d 1368, 1376 (9th Cir.1988), *cert. denied sub nom. Jordan v. Hodel,* —— U.S. ——, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989); *Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 73 (3d Cir.1986).

We believe plaintiff succeeded in establishing all three elements. Jalil unquestionably engaged in a protected activity when he filed discrimination claims with the DCR and the EEOC. And, obviously, Jalil was discharged. He demonstrated the causal link between the two by the circumstance that the discharge followed rapidly, only two days later, upon Avdel's receipt of notice of Jalil's EEOC claim. *See Burrus v. United Tele. Co.,* 683 F.2d 339, 343 (10th Cir.) ("The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."), *cert. denied,* 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633 (1982). Accordingly, Jalil established a prima facie case of retaliatory discharge.

■ At this point, the burden shifted to defendant to advance a legitimate, nondiscriminatory reason for discharging Jalil. Avdel easily met this burden by introducing evidence that plaintiff was fired for his insubordination in twice refusing to immediately remove his headset radio when so directed. To obtain summary judgment, then, Avdel needed to show that plaintiff could not raise an issue of fact regarding whether defendant's proffered explanation was pretextual. *Pollock,* 794 F.2d at 865.

---