**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-2147
_____

DR. LLOYD NORMAN, III,

Appellant
v.

THE READING SCHOOL  DISTRICT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 08-4266)
Magistrate Judge: Hon. Lynne A. Sitarski[*]

Submitted March 15, 2011

Before:  RENDELL, BARRY, and CHAGARES, Circuit Judges.

(Filed: August 2, 2011)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Lloyd Norman appeals the District Court's grant of summary judgment to the

Reading School District ("RSD") on his claims for age and racial discrimination and

retaliation for filing a complaint with the Pennsylvania Human Relations Commission.

_____

[*] Both parties consented to the exercise of jurisdiction by Magistrate Judge Sitarski
pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Norman contends that he was passed over for multiple positions in the RSD based on the RSD's discriminatory animus. For the reasons that follow, we will affirm the judgment of the District Court.

## I.

We write for the parties' benefit and recite only the facts essential to our disposition. Dr. Lloyd Norman is a fifty-eight year old African American male who has a Master's degree in Special Education and a Doctorate in Educational Administration. Norman also has completed a certificate program and received a Superintendent's Letter of Eligibility. Norman worked as a teacher in the School District of Philadelphia for over twenty years, in addition to his role as an adjunct university professor. In 1997, Norman was hired as a teacher in the RSD and within a year was promoted to Dean of Students. In 1998, Norman began his role as Vice Principal at Reading High School. In 2000, Norman filed a complaint with the Pennsylvania Human Relations Commission ("PHRC") alleging that he was discriminated against based on his race because the RSD tried to lower his salary without a meritorious basis. Norman and the RSD amicably resolved the salary issue and Norman withdrew his complaint. Norman performed his role as Vice Principal at Reading High School through 2008. From June 2008 until the time of this appeal, Norman was employed as the Principal of Southwest Middle School after the Superintendent transferred Norman into the position.

The RSD School Board consists of nine publicly elected members who serve four staggered terms. When the RSD has an open position, it is standard procedure for the Superintendent to post the position. However, the Superintendent has the authority to

2

transfer Vice Principals and Principals among open positions as needed. When a position is posted, the RSD administration selects who to interview, conducts the interviews and makes recommendations to the Superintendent based on their evaluation scores. The Superintendent then interviews potential candidates and makes a recommendation to the RSD Board. The Board votes on whether to accept the Superintendent's recommendation and has the ultimate authority to extend an offer to a candidate.

In January 2007, RSD promoted Joel Brigel to the position of Principal of Southern Middle School. The open position was never posted since Brigel's promotion came via a Superintendent transfer. Brigel was a thirty-five year old Caucasian male with a Master's degree in Education and Principal's certificate. Brigel had been a highly effective Vice Principal for two years at Southern Middle School and prior to this position was a teacher at the school for six years. The Superintendent found that Brigel would be a good fit to return to the school where he had been an effective Vice Principal.

In March 2007, Norman applied for the position of Director of Special Education. The RSD eventually hired Mark McIntyre, a forty-four year old Caucasian male for the position. McIntyre had a Master's degree in Education and an Education Specialist degree in School Psychology. He also had years of administrative experience as Director of Special Education and Assistant Director of Special Services. The RSD administration appointed a committee, which consisted of three individuals, two of whom were African American, and the committee scored McIntyre higher than Norman based on his knowledge of special education specific practices and his ideas to implement certain special education mandates. The committee concluded that Norman did not have the

requisite technical knowledge and expertise for the position and noted that he struggled to answer questions regarding requirements of new public law, terminology for individualized education programs, and related special education issues.

In May 2007, the RSD promoted Alex Brown to Principal of Northeast Middle School. The open position was never posted at the time of Brown's promotion. However, the position was posted in 2006, but Norman never applied and the RSD could not find suitable candidates. Brown was a thirty-two year old African American male with prior experience as a Vice Principal. Brown had not earned his Principal certificate.

In July 2007, Norman applied for the position of Principal of Southwest Middle School. In 2006, the RSD had offered Norman the Vice Principal position at Southwest Middle School with the promise of transitioning him into the Principal position within six months when the current Principal retired. Because being Vice Principal of a middle school was less prestigious than Vice Principal of a high school, Norman turned down this prior offer. In 2007, RSD ultimately selected Michelle Wiley, a fifty-two year old African American female. Wiley did not have a Doctorate degree, but had earned a Master's degree and a Principal's Certification in Educational Administration and had three years of experience as a school administrator. Wiley scored better than Norman in the interview process. The interview committee noted that Norman was unable to provide an explanation of the anchors or content of elementary education and was not aware of the school's status, scores or No Child Left Behind ("NCLB") improvement plan. Additionally, it appeared that Norman had never visited the school.

4

Around the same time, Norman applied for the position of Director of Elementary Education. The School District hired Eric Turman, a thirty-six year old African American male. Turman had initially applied and interviewed for the position of Director of Secondary Education, but the administration believed he was a good candidate for the Director of Elementary Education. Turman had a Master's degree and Principal's Certification and had prior Principal experience. The interview committee noted that during the interview process Norman did not demonstrate any evidence of elementary experience, a working knowledge of the current NCLB status of RSD schools, or any knowledge of curriculum standards.

Also in July, Norman applied for the position of Director of Secondary Education. The School District hired Dr. Robin Laysears-Smith, a forty-seven year old African American female. Laysears-Smith scored higher marks than Norman during the interview process. Again, the interview committee noted that Norman did not demonstrate a comprehensive knowledge of the curriculum standards and presented no vision or plan for the position.

Almost a year later in March 2008, Keith Stamm, a member of the Reading School Board, posted inappropriate comments about Norman on his blog. The RSD Board passed a resolution in March 2008 denouncing Stamm's conduct and statements. The Resolution distanced the RSD from Stamm's comments and explained that the RSD does not condone or participate in any activity which reflects a negative view on any ethnic group.

5

On September 4, 2008, Norman filed suit alleging age and racial discrimination and retaliation. On March 30, 2010, the District Court granted summary judgment to RSD on all claims. Norman filed a timely notice of appeal.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary, and we apply the same legal standard as it should have. Vitalo v. Cabot Corp., 399 F.3d 536, 542 (3d Cir. 2005). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting our analysis, we must view the record in the light most favorable to Norman, and must draw all reasonable inferences in his favor. See Vitalo, 399 F.3d at 542. To defeat summary judgment, however, Norman must "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

## III.

Norman contends that he was the most qualified candidate for the six open positions at issue from January to July 2007, and failed to obtain a position because the RSD discriminated against him based on his race and age and retaliated against him based on his 2000 PHRC complaint. He alleges that the entire interview process was a sham as the RSD Board predetermines the successful candidate based on its particular discriminatory animus.

6

A.

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a). In the absence of direct evidence of discrimination,[1] a plaintiff may prove discrimination according to the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. Id. at 802. If the plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its decision. Id. Once the employer meets its "relatively light burden," the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual. Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994). Accordingly, once an employer has proffered a legitimate, nondiscriminatory reason, the plaintiff "generally must submit evidence which: 1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than

---

[1] Norman maintains that he has provided direct evidence of discrimination such that this Court should apply the standard set forth in Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989). We agree with the District Court that Norman has not provided direct evidence that race, age or filing of his PHRC complaint was a substantial factor in RSD's employment decisions. Norman bases his claims on circumstantial evidence and, therefore, his claims will be analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

7

not a motivating or determinative cause of the adverse employment action." Id. at 762. Because the ultimate issue is whether "discriminatory animus" motivated the employer, it is not enough to show that the employer made a "wrong or mistaken" decision. Id. at 765 (citations omitted). Rather, the plaintiff must uncover "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation that would allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason. Id.

Norman argues that the RSD discriminated against him on the basis of his race by filling two positions he applied for with Caucasian individuals. To maintain a prima facie case for racial discrimination, Norman must show that (1) he is African American; (2) he was qualified for the position; (3) he was not hired for that position; and (4) similarly situated persons who are not African American were treated more favorably. Jones v. Sch. Dist. Phila., 198 F.3d 403, 410-11 (3d Cir. 1999).

We conclude that Norman has established a prima facie case of racial discrimination as to RSD's filling of the two positions. However, RSD has proffered legitimate, nondiscriminatory reasons for hiring Joel Brigel for one position and Mark McIntyre for the other.[2] RSD explained that it hired Brigel based on his credentials and his prior success as a Vice Principal in the same school. Likewise, RSD proffered that

---

[2] Norman argues that RSD's evaluation forms should not be considered by this Court in determining whether RSD had a legitimate business reason for their employment decisions because such forms are purely subjective. We are not persuaded by this argument or Norman's contention that the interview process was a sham as he has provided no evidence beyond speculation that the scores were in any way discriminatory or fabricated.

McIntyre was hired over Norman because he was equally qualified and the committee was impressed with his knowledge of special education specific practices and his ideas to implement certain special education mandates. We agree with the District Court that Norman has not provided a genuine issue of material fact that RSD's reasons for its employment decisions were a pretext for racial discrimination. Therefore, we will affirm the District Court's grant of summary judgment as to Norman's racial discrimination claims.

B.

Norman argues that the RSD discriminated against him on the basis of his age by filling the six positions with younger employees. In order to establish a prima facie case of age discrimination, Norman must show that he: (1) is over forty years old; (2) is qualified for the position in question; (3) was not hired for the position; and (4) the position was awarded to someone sufficiently younger to permit an inference of age discrimination. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995). A prima facie showing creates a presumption of age discrimination that the RSD then can rebut by presenting a legitimate, nondiscriminatory reason for the adverse employment decision. Id. If the RSD can proffer a legitimate, nondiscriminatory reason, the burden shifts to Norman to show that the RSD's stated reasons are not the true reasons, but merely a pretext for discrimination. Id.

Assuming Norman can make a prima facie case for age discrimination,[3] Norman cannot maintain a claim for age discrimination because he has not shown that the RSD's reasons for its employment decisions were pretext for discrimination. RSD proffered that each hiring decision was based on the fact that the candidate had comparable credentials, displayed a more comprehensive knowledge of the curriculum standards, and performed better in the interview than Norman. Norman rests his argument on the fact that he is more qualified and experienced than the candidates hired and concludes, based on this alone, that the RSD must be discriminating against him because of his age. Unfortunately, a showing that the employer's decision was wrong or mistaken does not suffice for establishing pretext. See Fuentes, 32 F.3d at 765. Therefore, we conclude that Norman has failed to establish a claim for age discrimination and, hence, we will affirm the District Court's grant of summary judgment on that claim.[4]

C.

Norman alleges that RSD retaliated against him by rejecting his applications for positions based on his 2000 PHRC complaint. To establish a prima facie case of retaliation, a plaintiff must show: (1) he engaged in protected activity; (2) he suffered an

---

[3] Norman failed to make a prima facie showing of age discrimination in relation to the hiring of Alex Brown because Norman never applied for the position. The position at Northeast Middle School was open for an extended period of time and Norman never made a formal application for the position nor adequately conveyed his interests in this particular position. As a result, the RSD never rejected Norman's candidacy for the position.

[4] Norman contends that all six employment rejections need to be considered as a whole and not individually in determining discrimination based on race and age. We are not convinced by this "totality of circumstances" argument, and even if we applied such a standard, Norman has failed to show a pattern of pretextual behavior.

adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989). Once a plaintiff establishes a prima facie case for retaliation, the defendant must articulate a legitimate, non-retaliatory reason for the decision. Id. If a legitimate, non-retaliatory business reason is proffered, the plaintiff then must show evidence of the employer's discriminatory motive, and demonstrate that the legitimate reason was merely a pretext for the underlying discriminatory motive. Moore v. City of Phila., 461 F.3d 331, 342 (3d Cir. 2006).

Norman has failed to sustain a prima facie claim for retaliation because there is no causal link between his filing of a complaint in 2000 and the rejection of his applications in 2007. We have recognized that the two main factors in showing a causal link for retaliation are temporal proximity and evidence of ongoing antagonism. See Abramson v. William Paterson Coll., 260 F.3d 265, 288 (3d Cir. 2001). Norman's PHRC complaint was filed seven years prior to the RSD's employment decisions and there was no evidence of a pattern of antagonism in the intervening period. Therefore, we conclude that there is no causal connection between Norman's filing of the PHRC complaint and the RSD's subsequent employment decisions. Even assuming a prima facie case of retaliation could be established, Norman has failed to show that the RSD's proffered reasons for choosing other candidates over Norman were merely pretext for its underlying discriminatory motive. Accordingly, we will affirm the District Court's grant of summary judgment on Norman's retaliation claim.

11

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.