**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4251
_____

PHYLLIS ATKINSON,

Appellant

v.

NORTH JERSEY DEVELOPMENTAL; CAROLE WOLKE

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 06-05485)
District Judge:  Hon. Peter G. Sheridan

Submitted September 20, 2011

Before:  AMBRO, CHAGARES, and ALDISERT, Circuit Judges.

(Filed December 1, 2011)
_____

OPINION
_____

CHAGARES, Circuit Judge.

Phyllis Atkinson appeals the District Court's grant of summary judgment to the

North Jersey Developmental Center and its employee Carole Wolke (hereinafter

"NJDC") on her claims of racial discrimination and retaliation.  Atkinson contends that

Wolke discriminated against her in giving her a low performance review, issuing her a

warning for arriving late to work, denying her vacation requests, having her job duties adjusted, and engaging her in a heated argument where Wolke said she would "fix" her. Additionally, Atkinson maintains that based on her complaints regarding these discriminatory acts, NJDC retaliated against her. For the reasons that follow, we will affirm the judgment of the District Court.

I.

We write for the parties' benefit and recite only the facts essential to our disposition. Phyllis Atkinson is an African-American woman who was employed by NJDC as a clerk transcriber from 1980 until her retirement in September 2007. In the fall of 2003, Carole Wolke, a Caucasian woman, was NJDC's Assistant Director of Nursing and became Atkinson's immediate supervisor. In April 2004, Wolke performed Atkinson's performance assessment review ("PAR"), assigning her a score of twenty-four out of a possible thirty and citing specific areas where Atkinson could improve her job performance. Wolke noted that this score indicated that Atkinson met the essential criteria for the majority of her job responsibilities and exceeded the essential criteria in the remaining duties. Despite the fact that Wolke's assessment was an improvement over Atkinson's two previous PAR scores, she was not content with her review and requested a meeting with Wolke to discuss her score. Wolke and Atkinson never met to review the PAR. On September 24, 2004, Wolke sent a letter to the Director of Nursing Roxanne Lotts complaining about her PAR score, Wolke's favoritism towards other employees, and that she was overworked with paperwork and felt underappreciated for the amount of

2

work she performed. Wolke never received a copy of this letter. Eventually, Atkinson's PAR score was raised to a twenty-seven.

On December 1, 2004, Atkinson and Wolke exchanged heated words, when Wolke confronted her regarding statements she made to other co-workers that Wolke was a racist. Atkinson contends that, during this conversation, Wolke stated that she would "fix" Atkinson if the comments continued. Following the argument, Atkinson wrote another letter to Lotts recounting the confrontation and clarifying that she felt that Wolke discriminated against her "like a racist" because of past incidents.

Atkinson, on March 22, 2004, requested a vacation leave for the Thanksgiving holiday. NJDC's vacation policy required that Atkinson submit all such requests no later than March 15, 2004. When she received no response, Atkinson re-submitted the request on November 19, 2004. On that same day, Wolke denied her request for vacation. Despite this denial, a NJDC supervisor later granted Atkinson the vacation leave.

On February 14, 2005, Atkinson called NJDC around eleven in the morning, informing the staff that she would be late to work and stating that she would not arrive for another hour. Atkinson called back to work around one in the afternoon requesting an emergency administrative leave day. A supervisor granted her request, but she was able to report to work shortly afterwards. Because Atkinson was supposed to report to work at nine in the morning and did not call in to give notice that she would be late until around eleven, Wolke issued her a "Red A" disciplinary notice. This notice, however, was later removed from Atkinson's record.

3

Atkinson also alleges that during this time period Caucasian co-workers were treated more favorably than her. Specifically, Atkinson contends that NJDC employee Donna Corroda, a Caucasian female, received a new desk and computer from Wolke, whereas Wolke told Atkinson she did not need a desk or computer to perform her job duties. At all times, however, Atkinson had a desk and computer and, eventually, her desk was replaced with new furniture.

On February 28, 2005, Atkinson filed a New Jersey Grievance Procedure Form, complaining about suffering emotional distress and headaches related to harassment in the workplace. The complaint did not include allegations of racial discrimination. Atkinson alleges that in response to this filing her new supervisor, Michael Buongiorno, started micromanaging her work. On March 28, 2005, Atkinson filed a Discrimination Complaint with the New Jersey Department of Personnel. Following this filing, Atkinson took an extended sick leave until June 2005. Atkinson, upon her return, complained that she did not receive all her job responsibilities back, but admitted that she did not have a problem with the reduction in work because her duties were overwhelming. From 2005 through 2007, Atkinson took a series of medical leaves and retired in June 2007.

Atkinson filed a pro se complaint in the District Court of New Jersey, alleging race discrimination and retaliation under Title VII of the Civil Rights Act.[1] On October 5, 2010, the District Court granted summary judgment to NJDC, finding that Atkinson did not present a prima facie case of retaliation under Title VII because she had not

---

[1] The District Court dismissed all of Atkinson's claims under New Jersey Law Against Discrimination. Atkinson does not appeal this dismissal.

4

demonstrated a causal connection between any alleged protected activity and a materially adverse action by NJDC. Similarly, the District Court granted summary judgment on Atkinson's discrimination claim, concluding that she had failed to show an adverse employment action to satisfy a prima facie claim of discrimination. Further, even if such a prima facie case could be made, the District Court found that NJDC had articulated a legitimate, nondiscriminatory reason for its actions and Atkinson had failed to show that these reasons were pretext for discrimination. Atkinson filed a timely appeal.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's grant of summary judgment is plenary, and we apply the same legal standard as it should have. Vitalo v. Cabot Corp., 399 F.3d 536, 542 (3d Cir. 2005). A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In conducting our analysis, we must view the record in the light most favorable to Atkinson, and must draw all reasonable inferences in her favor. See Vitalo, 399 F.3d at 542. To defeat summary judgment, however, Atkinson must "show[] that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1).

## III.

Under Title VII, it is unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

Additionally, Title VII contains an anti-retaliation provision which provides that it is "an

unlawful employment practice for an employer to discriminate against any of his

employees . . . because [the employee] has opposed any practice made an unlawful

employment practice." Id. § 2000e-3(a).

In the absence of direct evidence of discrimination or retaliation, as here, a

plaintiff may prove her claim according to the burden-shifting framework set forth in

McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas,

the plaintiff bears the initial burden of establishing a prima facie case of unlawful

discrimination or retaliation. Id. at 802. If the plaintiff succeeds, the burden of

production shifts to the employer to articulate a legitimate, nondiscriminatory reason for

its decision. Id. Once the employer meets its "relatively light burden," the burden of

production returns to the plaintiff, who must show by a preponderance of the evidence

that the employer's proffered reason is pretextual. Fuentes v. Perskie, 32 F.3d 759, 763

(3d Cir. 1994). Accordingly, once an employer has proffered a legitimate,

nondiscriminatory reason, the plaintiff "generally must submit evidence which: 1) casts

sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a

factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the

factfinder to infer that discrimination was more likely than not a motivating or

determinative cause of the adverse employment action." Id. at 762. Because the ultimate

issue is whether "discriminatory animus" motivated the employer, it is not enough to

show that the employer made a "wrong or mistaken" decision. Id. at 765 (citations

6

omitted).  Rather, the plaintiff must uncover "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanation that would allow a reasonable factfinder to believe that the employer did not truly act for the asserted reason.  Id.

For Atkinson to maintain a prima facie case of racial discrimination, she must show that (1) she is African American; (2) she was qualified for the position; (3) she experienced an adverse employment action; and (4) similarly situated persons who are not African American were treated more favorably.  Jones v. Sch. Dist. Phila., 198 F.3d 403, 410-11 (3d Cir. 1999).  We are not persuaded that Atkinson has demonstrated a prima facie case of discrimination, as she has failed to show she experienced an adverse employment action or that similarly situated persons not in her protected class were treated more favorably.  The only possible adverse employment action that Atkinson raises is the reduction in her workload, which the record demonstrates was requested by Atkinson herself through her complaints about feeling overwhelmed by her job duties.  To the extent that Atkinson alleges that her PAR score, vacation leave, and "Red A" disciplinary notice resulted in adverse employment actions, we note that these complaints were adjusted in Atkinson's favor.  Further, we agree with the District Court that the record does not demonstrate that NJDC or Wolke treated non-African Americans more favorably, as Atkinson's allegations appear self-serving and contradictory to her deposition testimony.  Therefore, we agree with the District Court that Atkinson has not established a prima facie case of race discrimination.

7

To establish a prima facie case of retaliation, Atkinson must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989). We conclude that Atkinson has failed to sustain a prima facie claim of retaliation because she failed to raise an instance where she engaged in a protected activity, and, similar to her discrimination claim, there is no evidence that Atkinson suffered an adverse employment action. As a result, we agree with the District Court that Atkinson cannot maintain a prima facie case of retaliation.

Moreover, even assuming that Atkinson could demonstrate a prima facie case of discrimination and retaliation, NJDC has proffered legitimate nondiscriminatory reasons for all of its actions – for example, Atkinson's job performance and tardiness in submission of her vacation request and arrival to work – and Atkinson has failed to show these reasons were a pretext for discrimination. Therefore, we conclude that Atkinson's discrimination and retaliation claims have no merit and will affirm the District Court's grant of summary judgment.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.