NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3257
_____

PAMELA MACKNET,

Appellant

v.

UNIVERSITY OF PENNSYLVANIA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-05321)
District Judge: Hon. Michael M. Baylson
_____

Submitted Under Third Circuit LAR 34.1(a)
June 11, 2018

Before: AMBRO, JORDAN, and HARDIMAN, *Circuit Judges*

(Filed: June 15, 2018)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

Pamela Macknet appeals the District Court's order granting summary judgment in favor of The Trustees of The University of Pennsylvania ("Penn") on her retaliation claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(d), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12203(a), and Pennsylvania's Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 955(d). We will affirm.

## I.     BACKGROUND

In May 2005, Penn hired Macknet as an Administrative Assistant at its Perelman Center for Advanced Medicine in the Hematology/Oncology Department. It terminated her employment on December 10, 2014. Pursuant to Penn's Performance Improvement/Discipline policy, the normal disciplinary procedure before terminating someone's employment is to issue an oral warning, then to issue a written warning, and then to place the employee on probation.

In January 2012, Penn issued Macknet an oral warning for deficient job performance regarding patient care and administrative work. In June 2012, it issued her another oral warning, this time for problems with time management, prioritizing patient issues, and submitting time cards by the proper procedure. In August 2012, Macknet met with her supervisor, Amanda Smith, for help in improving her job performance. Smith let Macknet know she was still under an "oral warning" because there had not yet been a significant improvement in her job performance. (App. at 157.)

In September 2013, Penn issued Macknet a written warning because she entered incorrect prescription medication information into a patient's electronic chart and allegedly violated the Health Insurance Portability and Accountability Act ("HIPAA") by

2

mistakenly leaving a patient's test results on another person's voicemail. That written warning stated that her "overall job performance continues to be below the standards of the department." (App. at 164.)

In a March 2014 letter, Penn placed Macknet on probation for her continued sub-standard performance. Specifically, Macknet was not checking email and voicemail consistently and had sent a message about a patient to the wrong hospital employee, which resulted in delayed care for the patient. The probation letter warned that, without improvement in her job performance, she could be terminated even after the probationary period: "Failure to consistently meet all of the performance expectations for your position during or after this probationary period may result in the immediate termination of your employment with this department and the University of Pennsylvania." (App. at 167-68.) That warning was consistent with Penn's Performance Improvement/Discipline policy, which also states: "If during, at the conclusion of, or subsequent to the probationary period, the staff member's performance or conduct is still unacceptable, the supervisor ... will determine if termination is appropriate." (App. at 146.) In June 2014, Macknet's probation ended.

Shortly before that, in April 2014, Macknet filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), in which she alleged, among other things, discrimination and retaliation based on her age and disability. In that "complaint for retaliation and for discrimination[,]" Macknet specifically "nam[ed] Helen [Sivieri,]" who was the Clinical Division Administrator of the Hematology/Oncology Department. (App. at 385.) She also noted that she had "made numerous complaints to

3

Michelle Hackett, HR representative[,]" but she did not specifically allege that Hackett had committed any improper conduct. (App. at 385.) On September 10, 2014, the EEOC issued a Right to Sue letter (the "2014 Right to Sue letter"), which stated that she had to initiate any lawsuit arising from the facts in her charge "within 90 days of [her] receipt of this notice." (App. at 69 (emphasis omitted).) Macknet does not know when she received the 2014 Right to Sue letter.

On November 25, 2014, Macknet committed another HIPAA violation when she emailed confidential patient information to the wrong person. After an inquiry into that incident, Penn terminated Macknet's employment on December 10, 2014. Sivieri decided to fire Macknet after discussing the matter with Hackett and Smith. Sivieri testified that, in response to Hackett asking her how she would like to handle the latest problem with Macknet, Sivieri said that "there have been a long list of infractions for [Macknet] all in her file and that this was just kind of the last. And because it was [HIPAA], it just kind of exacerbated an already bad performance situation." (App. at 198.) Sivieri further testified that Smith recommended termination after "a long history of performance issues. And it was just another issue just added to the pile." (App. at 203.) Dr. Bruce Giantonio, who was one of the doctors whom Macknet supported at the time of her termination, testified that he "acquiesced" in the decision to terminate Macknet and "agreed that [Penn] had no choice at [that] point" because "[t]he complaints had been building on performance for a while[,]" which he thought "met the criteria for the firing." (App. at 361.)

4

At the time of Macknet's termination, Sivieri and Smith did not know that Macknet had filed an EEOC charge in April 2014, and they were not aware of the existence of her 2014 Right to Sue letter. Hackett, on the other hand, did know that Macknet had filed an EEOC charge against Penn, though she did not recall when she had learned of it. But Hackett was not aware of the 2014 Right to Sue letter.

After her firing, Macknet filed a second EEOC charge. She alleged that she was retaliated against for having filed the earlier EEOC charge in April 2014, the proof being that, by her calculation, Penn terminated her employment on the day after her 2014 Right to Sue letter expired.[1] The EEOC issued Macknet another Right to Sue letter, which allowed her to file the present suit alleging that Penn had retaliated against her in violation of the ADEA, ADA, and PHRA.

Penn moved for summary judgment, which Macknet opposed. The District Court held a telephonic conference, considered the written submissions, and ultimately granted summary judgment for Penn. Macknet has timely appealed.

## II. DISCUSSION[2]

---

[1] As explained in Section II.D, *infra*, Macknet appears to have been mistaken about the date from which to calculate when her 2014 Right to Sue letter expired.

[2] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. We exercise plenary review over a District Court's grant of summary judgment. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We construe the evidence in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Macknet argues that the District Court erred in granting summary judgment for Penn because she raised genuine issues of material fact as to whether Penn retaliated against her by waiting to terminate her employment until after her 2014 Right to Sue letter had expired. Penn responds that Macknet's claims for retaliation fail as a matter of law because she cannot show a causal connection between her April 2014 EEOC charge and her termination, and, even if she could, there was a legitimate, non-discriminatory reason for terminating her employment, which Macknet cannot demonstrate was a pretext.

Because "[t]he ADA, ADEA, and PHRA contain nearly identical anti-retaliation provisions that prohibit discrimination ... [based on] protected activity[,]" we have "interpret[ed] the anti-retaliation provisions of [those statutes] as applying identically ... and [as being] governed by the same set of precedents." *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 564, 567 (3d Cir. 2002). We thus address all three statutes simultaneously.

We analyze retaliation claims "using the burden-shifting framework that the Supreme Court announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [(1973).]" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (citation omitted). Under that framework, "a plaintiff asserting a retaliation claim first must establish a prima facie case by showing (1) that she engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Id.* (internal quotation marks, alterations, and citation omitted). Next, "[i]f the plaintiff makes [those] showings, the

6

burden of production of evidence shifts to the employer to present a legitimate, non-retaliatory reason for having taken the adverse action." *Id.* Finally, "[i]f the employer advances such a reason, the burden shifts back to the plaintiff to demonstrate that the employer's proffered explanation was false[] and that retaliation was the real reason for the adverse employment action." *Id.* (internal quotation marks and citation omitted). "Although the burden of production of evidence shifts back and forth, the plaintiff has the ultimate burden of persuasion at all times." *Id.*

Here, with respect to Macknet's burden to prove a prima facie case, the parties do not dispute that Macknet's April 2014 EEOC charge constituted a protected activity and that Penn's termination of Macknet's employment constituted an adverse action. They only dispute whether Macknet can establish a causal connection between the two. A plaintiff may establish a causal connection based on "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action[,]" "a pattern of antagonism coupled with timing[,]" or "evidence gleaned from the record as a whole[.]" *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citation omitted). Macknet advances six theories in an attempt to raise a genuine issue of material fact.[3] None of them succeed.

---

[3] Macknet mentions temporal proximity and a pattern of antagonism but does not seriously develop arguments based on either. Indeed, she appears implicitly to recognize the weakness of any temporal proximity argument in this case because she argues that a failure to establish temporal proximity does not disprove a causal connection between her 2014 EEOC charge and her firing.

Nevertheless, even if we were to consider a causal connection based on temporal proximity, that theory would fail because the period of nearly eight months between the charge and her firing is insufficient to establish temporal proximity. *See LeBoon v.*

**A.      Macknet Fails To Raise A Triable Issue Under A "Cat's Paw" Theory.**

Macknet attempts to raise a triable issue based on a "'cat's paw' theory." (Opening Br. at 19.)  She suggests that an employee may "hold [her] employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision" if the employee can prove two elements: that the "supervisor perform[ed] an act motivated by ... animus that is intended ... to cause an adverse employment action," and that the "act is a proximate cause of the ultimate employment action[.]"  *Staub v. Proctor Hosp.*, 562 U.S. 411, 415, 422 (2011) (emphasis omitted).  Macknet argues that, because Hackett was aware of her April 2014 EEOC charge and was named in it, there is a genuine issue of material fact concerning a causal connection between the charge and her firing.  We disagree.

Macknet has not directed us to any evidence of a discriminatory or retaliatory animus that Hackett harbored against Macknet.  In the April 2014 EEOC charge, Macknet noted that she "made numerous complaints to ... Hackett," but she did not allege that Hackett behaved improperly or held any discriminatory animus toward her.  (App. at 385.)  Even if Macknet could show that Hackett had such animus, she has not shown that Hackett's discussion with Sivieri was a proximate cause of the ultimate decision to terminate her employment.  When Sivieri consulted with Hackett, Hackett agreed with

---

*Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (stating that "a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment"); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (stating that filing discrimination claims with the EEOC is a protected activity).  And Macknet has not pointed to any evidence in the record indicating a pattern of antagonism against her.

Sivieri's recommendation on how to handle the situation. No evidence suggests that Hackett made a recommendation that caused Sivieri to decide differently than she had already been inclined. Therefore, Macknet fails to raise a genuine issue of material fact under a cat's paw theory.

**B.      Macknet Fails To Raise A Triable Issue Based On Termination Of Her Employment After Successful Completion Of Probation.**

Macknet argues that there is a triable issue because she had successfully completed probation before Penn fired her. While it is true that the probation period had ended, that does not mean she was insulated from termination. Per the terms of her probation letter and Penn's Performance Improvement/Discipline policy, she remained at risk of termination even after completion of her probation. Macknet was informed of that policy, and, after she committed yet another HIPAA violation, Penn followed through by firing her. There is no basis to infer a retaliatory motive simply because Macknet's probation had ended.

**C.      Macknet Fails To Raise A Triable Issue Based On Dr. Giantonio's Testimony.**

Macknet points to the testimony of Dr. Giantonio to argue that she had no performance problems after completing probation. Dr. Giantonio testified that he thought her HIPAA violation "didn't rise to the level of ... losing one's job." (App. at 404.) But Macknet's argument fails to acknowledge that she committed a work-related infraction after her probation period ended, namely, another HIPAA violation. Furthermore, that argument ignores other testimony from Dr. Giantonio that he accepted the decision to terminate Macknet's employment because he "agreed that [Penn] had no choice at that

9

point[,]" and that "[t]he complaints had been building on performance for a while at that point[,]" which he thought "met the criteria for the firing." (App. at 361.) Dr. Giantonio's testimony thus fails to raise a genuine issue of material fact concerning her firing.

**D. Macknet Fails To Raise A Triable Issue Based On The Timing Of The Termination In Relation To The Expiration Of Her 2014 Right To Sue Letter.**

Macknet contends that the suspicious timing of her firing – the day after her 2014 Right to Sue letter expired – is sufficient to raise a triable issue. That contention is incorrect for two reasons.

First, she points to no evidence suggesting that any of her supervisors had knowledge of the 2014 Right to Sue letter, let alone its expiration date. Although Hackett acknowledged that she was aware of the April 2014 EEOC charge at the time of Macknet's termination, she was aware of neither Macknet's 2014 Right to Sue letter nor its expiration date.

Second, Macknet appears to have misjudged the date from which to calculate when her 2014 Right to Sue letter would expire. The letter, which was mailed on September 10, 2014, stated that Macknet had to file her lawsuit "within 90 days of [her] receipt of" the letter, (App. at 69 (emphasis omitted),) but she did not recall when she received it. "[I]n the absence of other evidence, courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed it." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999). Accordingly, we presume that Macknet received the letter on September 13, 2014, and, therefore, that the letter

10

expired 90 days later on December 12, 2014.  Because Macknet was terminated on December 10, 2014, her termination was still within the expiration date of her 2014 Right to Sue letter.  There is nothing suspicious in the timing of Penn's firing decision in relation to the expiration date of Macknet's 2014 Right to Sue letter.

### E. Macknet Fails To Raise A Triable Issue Over Whether She Committed A Second HIPAA Violation.

Macknet challenges whether her last HIPAA violation actually was a HIPAA violation because Hackett and Sivieri were uncertain whether the affected patient was notified of the violation, as required by regulation.[4]  Macknet argues that "[Penn's] failure to notify a patient of a claimed breach ... casts serious doubt on the alleged reasons for Plaintiff's termination."  (Opening Br. at 23.)  But Macknet misconstrues both Hackett's and Sivieri's testimony.

Hackett testified that she "d[id] not know" if the affected patient was notified of the violation, and she identified the person who would have that information.  (App. at 300.)  And Sivieri testified that she did not know if any report was made to the federal government because "that's not part of [her] job."  (App. at 208.)  Their testimony reveals simply that they lacked personal knowledge of whether Penn reported that HIPAA violation to the affected patient or the federal government.  That is not the same as saying that no report was made.

Even if it were true, however, that Penn failed in its reporting obligations under HIPAA, that does not mean that a violation did not occur.  Penn directs our attention to

---

[4] 45 C.F.R. §§ 164.400-414.

correspondence demonstrating that its employees investigated the incident and concluded that Macknet had committed a HIPAA violation by emailing confidential information to the wrong patient. And Penn specifically denies that it failed to follow any notification obligations regarding HIPAA and Macknet's conduct. Macknet's challenge to Penn's compliance with its HIPAA reporting obligations is not enough to raise a triable issue regarding whether a HIPAA violation occurred, let alone raising an issue about a causal connection between the April 2014 EEOC charge and her firing.

F. **Macknet Fails To Raise A Triable Issue Based On The Record As A Whole.**

Finally, our review of the record as a whole reveals no triable issues concerning such a causal connection. Because Macknet failed to raise a genuine issue of material fact in that regard, we agree with the District Court that she failed to make out a prima facie case for retaliation under the ADEA, ADA, or PHRA.

III. CONCLUSION

For the foregoing reasons, we will affirm the District Court's order granting Penn's motion for summary judgment.

12